PACIFIC SERVICE STATIONS CO., a California Corporation; George Pearson, an individual; Trans Tech Resources, Inc., a California corporation; Conrad Tona, an individual d/b/a Tona's Service Station; Melvin L. Roberts, an individual d/b/a Roberts Enterprises, Plaintiffs–Appellants,

v.

MOBIL OIL CORPORATION, a New York Corporation, Defendant–Appellee.

No. 9–46.

Temporary Emergency Court of Appeals.

Argued May 9, 1980.

Decided Oct. 31, 1980.

James S. Williams, Froneberger, Bonner & Zeff, San Francisco, Cal., with whom David M. Zeff, San Francisco, Cal., was on brief, for plaintiffs–appellants.

Jack D. Fudge, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., with whom Michael L. Hickok, Los Angeles, Cal., was on brief, for defendant–appellee.

Before JAMESON, ZIRPOLI, and DUNIWAY, Judges.

ZIRPOLI, Judge.

Appellants are five retail gasoline dealers who purchased petroleum products from appellee Mobil Oil Corporation and who were accorded a certain discount on the price of gasoline bought from Mobil. They brought suit in district court alleging that Mobil's withdrawal of the discount, on May 1, 1979, violated the Emergency Petroleum Allocation Act ("EPAA"), 15 U.S.C. §§ 751 et seq., and the regulations promulgated thereunder, 10 C.F.R. §§ 210–214.[1] Summary judgment was granted in Mobil's favor on October 30, 1979, and this appeal followed. Our jurisdiction is proper under 15 U.S.C. § 754(a)(1).

Appellants make two arguments. First, they contend that Mobil failed to discharge its burden of demonstrating the absence of factual issues with respect to the question whether withdrawal of the discounts resulted in an unlawful overcharge. Specifically, it is claimed that the district court's conclusion that the discounts were granted "solely for the purpose of meeting equally low prices offered by Mobil's competitors" and "not granted on the basis of any cost justification analysis by Mobil," RA at 712, left unresolved other factors bearing on the ultimate question of whether the prices charged were unlawful. These factors are listed and explained in FEA Ruling 1975–2, 40 Fed.Reg. 10655, and are used as the first step in calculating the maximum allowable refiner price under 10 C.F.R. §§ 212.31, 212.82(6) and 212.83. Second, appellants argue that their affidavits raised issues of fact precluding summary judgment on the question which the court below did decide: that the discounts were solely "competitive allowances."

We turn first to the latter argument. The EPAA issue raised is substantially identical to one presented in *Templeton's Service, Inc. v. Mobil Oil Corp.*, 624 F.2d 1084 (Em.App.1980). *Merry Twins, Inc. v. Exxon Corp.*, 611 F.2d 874 (Em.App.1979), and *Mr. Magic Car Wash, Inc. v. Department of Energy*, 596 F.2d 1023 (Em.App. 1978), although it appears here in a different procedural posture. In all three cases, gasoline retailers argued that the ostensibly "competitive discounts" they received from a refiner were in reality "cost–justified" within the meaning of Ruling 1975–2, and therefore represented "customary price differentials" which could not be lawfully eliminated.

In *Mr. Magic*, Mobil withdrew a discount from a retailer on grounds that the competitive situation which initially justified it no longer obtained. The retailer filed a complaint with the FEA, contending that the discount was cost–justified, but presented no evidence to support that conclusion, and the agency found in Mobil's favor. Mr. Magic, the retailer, then sued in district court, arguing that the agency's decision was in excess of its statutory authority and

---

1. Appellants also charged Mobil with violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and the Robinson–Patman Act, 15 U.S.C. § 13. Summary judgment was granted in favor of Mobil on those claims, neither of which is before the court on the instant appeal.

was not based on substantial evidence. The district court found that the agency had properly concluded that no evidence supported Mr. Magic's contention that the discount was cost–justified, and granted summary judgment to the agency on that basis, upholding its determination that Mr. Magic was not entitled to be placed in a unitary class of purchaser, but need only be placed by Mobil in a class of similarly situated retailers. This court affirmed, holding that the district court's determination of the lack of evidence before the agency was not clearly erroneous, 596 F.2d at 1028–29.

Similarly, in *Merry Twins, supra,* we found that the district court's finding, after trial, that no evidence supported the retailer's contention that a discount was cost–justified, was not clearly erroneous, 611 F.2d at 878–79. Therefore, because cost–justification was the only basis on which the retailers argued that the discount should have been used to define them as a separate class of purchaser, we found no error in the district court's determination of the appropriate class as one comprising all retail gasoline dealers receiving fuel from a particular Exxon terminal, *id* at 879.

*Templeton's, supra,* was also decided on appeal from a judgment entered after trial. The district court found that there was, again, no evidence to support the contention that the discounts granted to Detroit–area "N" Mobil dealers (those who did not lease their stations from Mobil [2]) "were based on

anything other than the necessity of meeting bona fide competition from other oil companies wanting to have these stations sell their own brand of gasoline," at 1086. Nevertheless, the district court went on to decide an issue not raised by the parties: whether Mobil should have established separate classes of "N" and "OG&L" dealers (those who lease their premises from Mobil), based on the "customary price differentials" allegedly separating them. The district court found that because Mobil had no expenses "relating to the upkeep, ownership or leasing of property on which the stations of [appellants] and other N dealers [were] located," *id.,* there was a cost–justified differential operating to distinguish "N" from "OG&L" dealers, and therefore that Mobil was required to compute a separate base price for the two classes. We reversed, based on the decision we affirmed in *Shell Oil Company v. Federal Energy Administration,* 527 F.2d 1243 (Em.App.1975), and held that the costs referred to by the district court were outside the purview of the EPAA, and could not properly be used to make a class of purchaser distinction under Ruling 1975–2.

 We agree with appellants here that they, unlike the retailers in the above three cases, did adduce some evidence that the purportedly competitive discounts were not extended solely to counteract offers made by Mobil's competitors.[3] Ruling

---

**2.** *See Templeton's Service, Inc. v. Mobil Oil Corp., supra,* at 1084 n.1 and n.2. Appellants here are all "N" dealers.

**3.** *See e. g.* RA at 651 " 11, 656 " 4, 662 " 9, 666 " 5, and 667 " 10. Appellants' affiants stated that Mobil employees had told them that execution of affidavits setting forth the making of offers by Mobil competitors was a mere formality, that the provision allowing the withdrawal of the discount was actually a means to ensure that stations were properly cared for, and that the discounts were extended in part to compensate "N" dealers for their investment in the stations. Moreover, appellants adduced evidence that Mobil never conducted periodic checks to determine if the competitive situation initially prompting the discounts continued to exist. Under Ruling 1975–2, the lack of such monitoring by a refiner may indicate a hidden cost justification basis for what otherwise may

appear to be a purely "competitive" discount. *See* 40 Fed.Reg. at 10658.

The issue before us at this juncture is whether a material factual dispute existed on the issue of the true basis of the discounts. The district court's "finding of fact" that the "competitive allowances were not granted on the basis of any cost justification analysis by Mobil" is of course not entitled to deference on review here as a resolution of a contested issue, *see Heiniger v. City of Phoenix,* 625 F.2d 842 at 843 (9th Cir. 1980). Rather, we view the finding as performing "the narrow functions of pinpointing for the appellate court those facts which are undisputed and indicating the basis for summary judgment," *id.* Appellants have not adduced evidence suggesting that competitive offers were not in fact made to them by other refiners.

Were it not for the rule set forth in *Templeton's,* however, the absence of a factual dispute

1975–2 itself, upon which Mobil heavily relies, notes that:

> [t]he FEA will look behind broad assertions that a particular differential was a "competitive" discount and will determine whether in fact the differential was extended to meet a competitive offer, *even if it was, whether it was equally justifiable on a cost basis. Where there is an equally strong cost justification for a "competitive" discount, FEA will require it to be continued.*

40 Fed.Reg. at 10658. [Emphasis supplied.] No party to this lawsuit disputes the validity or applicability of Ruling 1975–2.

■ However, the evidence of a possible unacknowledged cost justification basis for the discounts granted to the "N" dealers in this case relates solely to the sort of "upkeep" expenses discussed in *Templeton's*. Here, as in *Templeton's*, those expenses were incurred by Mobil pursuant to separate lease contracts with OG&L dealers. In short, the costs arguably justifying the discounts at issue in this case are not, under *Templeton's*, of a character which might require the discounts to be maintained despite their "competitive" basis,[4] *assuming the absence of grounds for finding other applicable customary price differentials.*

We must therefore turn to appellants' alternative argument that Mobil did not establish the lack of such grounds as a matter of law.

■ Appellants contended in the district court that even if the discounts were purely competitive, Mobil had not established the legality under 10 C.F.R. § 212.83 of the higher price which resulted when the discounts were removed. RA at 627–29. Mobil argues that this issue had never been raised below because appellants had failed to designate it in their statements of issues of fact to be litigated, required under the district court's local rules. See RA at 586–89, 671–2. We recognize that appellants' contention was not specified with the particularity it deserved, but that fact does not operate to relieve Mobil of its burden on summary judgment of demonstrating its right to prevail as a matter of law. *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970), 6 Pt. 2 Moore's Fed.Prac. ¶ 56.22[2] at 56–1344 (2d ed. 1980). In their complaint appellants charged that the elimination of the discount "raised the selling price to [appellants] to a price that exceeds the maximum allowable price chargeable to [appellants] and other similarly situated retail outlets in [appellants'] class of purchaser," RA at 21. This allegation cannot be conclusively controverted without reference to Ruling 1975–2, and to the regulations which it interprets, including 10 C.F.R. §§ 212.31 and 212.83.[5]

as to Mobil's internal "analysis" of the discount would not necessarily suffice to establish the purely competitive nature of the allowance. A refiner's own view of the proper characterization of the price differentials it uses binds neither its purchasers nor the courts. See note 4, *infra*.

4. We of course do not suggest that refiners may forestall inquiry into possible cost–justification grounds for discounts granted to retailers, by the simple expedient of requiring execution of standard form dealer affidavits attesting to the existence of offers from other refiners. As Ruling 1975–2 recognizes, discounts may be at once "competitive" and "cost justified." If there are cost justifications for a given discount which do not fall within the *Templeton's* exception, the discount may well be a customary price differential for purposes of making class of purchaser distinctions under 10 C.F.R. §§ 212.31 and 212.83.

5. Section 212.31 contains definitions applicable for purposes of computing maximum allowable prices under the "Refiner Price Rule," 10 C.F.R. § 212.83.

> Section 212.31 provides in relevant part that: "Class of purchaser" means purchasers to whom a person was charged a comparable price for comparable property or service pursuant to customary price differentials between those purchasers and other purchasers.

> • • • • •

> "Customary price differential" includes a price distinction based on a discount, allowance, add–on, premium, and an extra based on a difference in volume, grade, quality, or location or type of purchaser, or a term or condition of sale or delivery.

Section 212.83 prescribes the complex calculation necessary to determine a refiner's "maximum allowable price," which term is defined by § 212.82(6) as

The district court made no finding with regard to the "class of purchaser" in which appellants should properly have been included, nor does the record disclose what class of purchaser determinations Mobil itself made. In this respect, the instant case differs from *Templeton's, supra, Merry Twins, supra,* and *Mr. Magic, supra,* in each of which class of purchaser determinations were made after a plenary judicial or administrative hearing. Under the applicable regulations, maximum allowable prices simply cannot be determined without deciding upon the membership of the classes of purchaser to which they apply.

Ruling 1975–2 sets forth guidelines for making this decision. Its purposes *are not limited* to explaining the distinction between cost–justified and competitive discounts.[6] That distinction is *only one* factor to be taken into account in delineating appropriate purchaser classes. Others discussed in the Ruling include the location of the terminal from which gasoline is obtained by purchasers, the volumes purchased, the terms and conditions of sale, and the type of purchaser. *See* 40 Fed.Reg. at 10657 and 10 C.F.R. § 212.31. The first step in determining the applicable ceiling price under 10 C.F.R. § 212.83 is the computation of a base price for each class of purchaser. A class' base price is in turn determined by averaging prices charged in May 15, 1973 transactions between the supplier and the members of the class. Discounts which may be disregarded for purposes of making class distinctions must nevertheless be included for purposes of computing the average, *see* 10 C.F.R. § 212.83(a)(2). Thus it is entirely possible that Mobil's elimination of the discounts at issue in this case resulted in

overcharges to appellants. Whether this in fact occurred depends on the appropriate class divisions which applied. Mobil presented no argument or evidence concerning the class of purchaser structure it used, *see* RA at 505–44.

Such information is essential to sustain an ultimate conclusion that prices were lawful under 10 C.F.R. § 212.83, *see Longview Refining Co. v. Shore,* 554 F.2d 1006, 1011 (Em.App.1977). In this case a single purchaser class of all Los Angeles area "N" and "OG&L" dealers may be appropriate, *see Templeton's Service, Inc. v. Mobil Oil Corp., supra,* at 1087. However, we cannot make such a determination on the present record. For example, correct class distinctions may be instead based on the terminal from which dealers receive gasoline, *see* RA at 513, 521, if prices vary from terminal to terminal. *Cf. Merry Twins, Inc. v. Exxon Corp., supra,* 611 F.2d at 879. Unless appellants' class or classes of purchaser are known, the maximum allowable price cannot be determined. If the maximum allowable price is unspecified, of course, it cannot be decided as a matter of law that it was not exceeded.

Accordingly, we reverse. On remand, close attention to the factors set forth in Ruling 1975–2 should provide considerable assistance to the parties and the district court in determining the applicable classes of purchaser and in making the appropriate maximum allowable price calculations.

---

the weighted average price at which the covered product was lawfully priced in transactions with the class of purchaser concerned on May 15, 1973, computed in accordance with the provisions of § 212.83(a), plus increased product costs and increased nonproduct costs incurred between the month of measurement and the month of May 1973 . . . .

Taken together, the above regulations and Ruling 1975–2, set forth the method of calculating the maximum allowable price which a refiner may charge to a given retailer.

6. "This ruling is intended to provide further guidance to sellers in making price distinctions between different purchasers, by reviewing some of the pertinent factors which must be considered in making class of purchaser determinations. This ruling *also* is to provide guidance concerning certain specific kinds of circumstances which involve Robinson–Patman Act considerations, and which are known to be the source of particular difficulty with respect to this issue." 40 Fed.Reg. at 10656. [Emphasis added.]

Only the latter considerations have to do with the competitive/cost–justified distinction.