PACIFIC SERVICE STATIONS CO., a California corporation, George Pearson, an individual; Trans Tech Resources, Inc., a California corporation; Conrad Tona, an individual, d/b/a Tona's Service Station; Melvin L. Roberts, an individual, d/b/a Roberts Enterprises, Plaintiffs-Appellants,

v.

MOBIL OIL CORPORATION, a New York corporation, Defendant-Appellee.

No. 9–59.

Temporary Emergency Court of Appeals.

Argued March 5, 1982.

Decided Sept. 17, 1982.

---

James S. Williams, Froneberger, Bonner & Zeff, with whom Michael A. Bonner, San Francisco, Cal., of the same firm, on brief for plaintiffs-appellants.

Jack D. Fudge, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., with whom Michael L. Hickok and Linda C. Miller, San Francisco, Cal., of the same firm, on brief for defendant-appellee.

Before JAMESON, DUNIWAY and ZIRPOLI, Judges.

ZIRPOLI, Judge.

Five retail gasoline dealers appeal for the second time from the district court's entry of summary judgment holding that appellee Mobil Oil Corporation's unilateral withdrawal of their discounts on gasoline purchases did not result in charges exceeding the maximum lawful price under the Emergency Petroleum Allocation Act ("EPAA"), 15 U.S.C. §§ 751–760h and the regulations promulgated thereunder, 10 C.F.R. §§ 210–214.[1] We reverse.

## BACKGROUND

Our prior opinion sets out the facts and history of this case. *See Pacific Service Stations Co. v. Mobil Oil Corp.,* 636 F.2d 306 (Em.App.1980). In that opinion, we held that the district court's determination that appellants' discounts did not constitute a "customary price differential" for purposes of defining the boundaries of the class or classes of purchaser to which they belonged was fully supported by this court's decision in *Templeton's Service, Inc. v. Mobil Oil Corp.,* 624 F.2d 1084, *cert. denied,* 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980). 636 F.2d at 309.[2] We nevertheless reversed the judgment and remanded the case be-

---

1. Price controls on petroleum products were terminated on January 28, 1981, pursuant to President Reagan's issuance of Executive Order 12287, 46 Fed.Reg. 9909 (January 30, 1981).

2. The regulations define "class of purchaser" as "purchasers to whom a person has charged a comparable price for comparable property or service pursuant to *customary price differentials* between those purchasers and other purchasers." (Emphasis added.) 10 C.F.R. § 212.31.

cause Mobil had failed to carry its burden as the moving party to establish that there was no other basis for finding that the withdrawal of appellants' discounts had resulted in charges exceeding the maximum allowable price:

> The first step in determining the applicable ceiling price under 10 C.F.R. § 212.83 is the computation of a base price for each class of purchaser. A class' base price is in turn determined by averaging prices charged in May 15, 1973 transactions between the supplier and the members of the class. Discounts which may be disregarded for purposes of making class distinctions must nevertheless be included for purposes of computing the average, see 10 C.F.R. § 212.83(a)(2). Thus it is entirely possible that Mobil's elimination of the discounts at issue in this case resulted in overcharges to appellants. Whether this in fact occurred depends on the appropriate class divisions which applied. Mobil presented no argument or evidence concerning the class of purchaser structure it used . . . .

*Id.* at 310.

Both sides initiated further discovery on remand. Mobil deposed the appellants and they in turn served two extensive sets of interrogatories and requests for production of documents. Although Mobil ultimately supplied over 50,000·pages of documents, it generally refused to furnish information relating to transactions occurring outside southern California, the region in which appellants' service stations were located, or beyond the period from May, 1976, to May, 1979.[3] There were two major exceptions to these temporal and geographic restrictions: (1) Mobil produced documents reflecting the sales, price, volume, and grade of all gasoline it had sold to retail dealers in the Los Angeles area on May 15, 1973; and (2) it produced copies of its "Monthly Cost Allocation Reports" filed with the DOE[4] for the reporting periods from June, 1976, through May, 1979.[5]

On July 1, 1981, after Mobil had served its responses to appellants' discovery requests but before it had completed production of the documents to which it had made no objection, one of appellants' attorneys met and conferred with counsel for Mobil about the disputed portion of the requests.[6] On the next day, Mobil served appellants with its notice of motion for summary judgment. It did not complete its production of the unopposed documents until nearly two weeks later.

In support of its motion for summary judgment, Mobil filed an affidavit by Paul J. Ashby, Mobil's pricing manager who since January of 1974 has been in charge of base price determinations and class of purchaser designations. He testified that Mobil had determined base prices and classes of purchaser for all of its gasoline purchas-

---

**3.** In its responses to the two sets of interrogatories and requests for production of documents, Mobil argued that the complaint was subject to a limitations period of three years at most. Mobil therefore objected on relevancy grounds to interrogatories seeking information relating to events occurring more than three years before May 7, 1979, the date on which appellants filed the complaint.

**4.** For the sake of simplicity, the Department of Energy and its predecessor agencies, the Federal Energy Administration and the Federal Energy Office, are hereinafter collectively referred to as the "DOE."

**5.** The price control regulations permitted refiners to recoup certain cost increases by charging higher prices for their gasoline. If in a given month a refiner elected to charge purchasers for less than the total amount of the allocable cost increases he had incurred in the preceding

month, he was permitted to "bank" the remainder for later passthrough. *See* 10 C.F.R. § 212.83; *McWhirter Distrib. Co. v. Texaco, Inc.,* 668 F.2d 511, 516–17 (Em.App.1981). Inasmuch as the Monthly Cost Allocation Reports indicate the amounts of current and banked costs available for passthrough in the reporting period, *see Standard Oil Co. v. D.O.E.,* 596 F.2d 1029, 1043 n.26, 1047 (Em. App.1978), they provide information relating to prices charged all of Mobil's purchasers in the United States, and not just those in southern California.

**6.** Local Rule 3.15.1 of the Central District of California in pertinent part provides that a party may not file a motion to compel discovery unless his attorney first meets and confers with opposing counsel concerning the disputed issues.

ers in the United States by applying a single uniform and consistent policy without specific regard to regional characteristics. Under this policy, Mobil relied solely upon three factors in defining the boundaries of a class of purchaser of gasoline: (1) grade of gasoline, (2) type of purchaser (i.e. wholesale distributor, retail dealer, or commercial consumer), and (3) location of the supply terminal or bulk plant. Mobil did not rely upon the remaining three illustrative factors mentioned in the governing regulation, i.e. (4) volume, (5) quality, and (6) terms or conditions of sale or delivery, see 10 C.F.R. § 212.31 and DOE Ruling 1975–2, 40 Fed.Reg. 10655, because historically Mobil had not granted price differentials based upon these factors. Ashby further testified that because all of the terminals in the Los Angeles area charged retail dealers the same posted price, appellants were placed in a single class of purchaser comprising all of Mobil's retail dealers in the entire Los Angeles area.

To supplement his testimony pertaining to Mobil's method of calculating base prices, Ashby attached to his affidavit copies of pricing "instructions" that Mobil had issued nationwide. He testified that in applying these instructions to appellants' class, Mobil found that the set of transactions governing the determination of the base price[7] involved "OG&L" dealers[8] only.

In its supporting memorandum, Mobil argued that because, as Ashby's affidavit purported to show, Mobil had determined appellants' class of purchaser by applying the same formula that TECA had upheld in the Templeton's case, the result here must be the same: i.e. judgment for the supplier and against the service station dealers on the claim that the withdrawal of competitive allowances violated the federal price control regulations.

Appellants' opposition to Mobil's renewed motion for summary judgment took three forms. First, they moved to strike Ashby's affidavit on the ground that it was general and conclusory and not based upon personal knowledge as required by Rule 56(e).[9] Second, they moved for a continuance pursuant to Rule 56(f)[10] on the ground that Mobil had refused to permit discovery into areas essential to appellants' overcharge claim. And third, they filed an opposing memorandum arguing that even if Mobil's factual showing were deemed unobjectionable, it nevertheless failed to establish Mobil's right to judgment as a matter of law.

Mobil responded by filing a supplemental affidavit by Ashby and an affidavit by William C. Streets, Mobil's "in house" attorney in charge of compliance with DOE price and allocation control regulations since January of 1974. Ashby's supplemental affidavit was for the most part directed at shoring

7. The base price is computed by taking the average of the prices charged in sales to those class members who entered into transactions with the refiner on May 15, 1973, or on the date most recently prior thereto. 10 C.F.R. § 212.-93(a)(1) and (d); *Taunton Mun. Lighting Plant v. D.O.E.*, 669 F.2d 710, 712–13 (Em.App.1982). The set of transactions used to determine the base price may therefore be much smaller than the total number of class members. For example, if only one member entered into a transaction on May 15, 1973, the price he paid would become the base price for the entire class.

8. Mobil classifies its retail dealers into two categories: "OG&L" dealers (those who lease their premises from Mobil) and "N" dealers (those who do not lease their premises from Mobil). *See Templeton's Serv., Inc. v. Mobil Oil Corp.*, 624 F.2d at 1084 nn. 1 and 2. Only "N" dealers, such as appellants, ever received competitive allowances.

9. Fed.R.Civ.P. 56(e) in pertinent part provides:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. . . .

10. Fed.R.Civ.P. 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

up his claim to having personal knowledge of Mobil's policies and practices for determining base prices and classes of purchaser. Streets' affidavit, on the other hand, was offered in support of an argument first advanced in Mobil's reply memorandum: that no alleged error in Mobil's calculation of the base price applicable to appellants would have resulted in an overcharge when their discounts were withdrawn in May, 1979, because Mobil's bank of unrecouped costs available for passthrough to customers during that month [11] exceeded the amount of the claimed overcharge.[12]

Appellants countered by moving to strike both Ashby's supplemental affidavit and Streets' affidavit on the ground that neither had been shown to be based upon personal knowledge. With respect to Streets' affidavit, appellants raised the additional objection that Mobil's failure to raise the costs bank defense in its opening memorandum in support of the summary judgment motion should relieve appellants of the burden to produce opposing evidence on this issue.[13] They also argued that Mobil's reliance upon the Monthly Cost Allocation Reports created new grounds for a Rule 56(f) continuance because Mobil had denied appellants discovery of materials essential to their opposition to the costs bank defense. With respect to Ashby's supplemental affidavit, appellants argued in the alternative to their motion to strike that the affidavit actually contained evidence of errors committed by Mobil in making class of purchaser determinations.[14]

The district court denied appellants' Rule 56(f) motion and motions to strike and granted Mobil's motion for summary judgment on the basis of the challenged affidavits and exhibits. The court specifically concluded that Mobil had properly grouped all of its retail service station dealers in the Los Angeles area into a single class of purchaser and that because Mobil's $385,600,-000 bank of unrecouped costs "exceeded the amount of the allowance granted to its dealers, the withdrawal of the allowance could not, as a matter of law, result in an overcharge under the Emergency Petroleum Allocation Act. *Eastern Airlines, Inc. v. Mobil Oil Corp.*, 512 F.Supp. 1231 [ (S.D. Fla.1981), *rev'd on other grounds*, 677 F.2d 879 (Em.App.1982) ]." RA 1427–28. On appeal, appellants contend that the evidence upon which the district court relied was inadmissible and inadequate to sustain either its resolution of the class of purchaser issue or its determination that the size of Mobil's "bank" belied any grounds for appellants' overcharge claim.

### DISCUSSION

#### I. *Admissibility of Mobil's Evidence*

The party moving for summary judgment must bear the burden of showing that there is no genuine dispute as to any material issue of fact and that he is entitled to judgment as a matter of law. *McWhirter Distributing Co. v. Texaco, Inc.*, 668 F.2d 511, 519 (TECA 1981). If the evidentiary matter in support of the motion fails to establish the absence of a triable fact issue,

---

11. *See* note 5 *supra.*

12. Streets' affidavit does not specifically compare the size of Mobil's costs bank with the amount of the alleged overcharges. It does, however, purport to authenticate a simultaneously filed copy of the Monthly Cost Allocation reports that Mobil had previously produced to appellants, and it identifies a report entry as showing that Mobil claimed to have amassed a $385,600,000 bank of unrecouped costs available for passthrough in May, 1979.

13. Appellants have not expressly raised the untimeliness of Mobil's presentation of the costs bank defense as a basis for this appeal. We may nevertheless consider the untimeliness

factor in connection with appellants' contention that the trial judge abused his discretion in denying their Rule 56(f) motion for a continuance.

14. Ashby's supplemental affidavit stated that, although Mobil varied credit terms depending upon the individual dealer's credit worthiness, it ignored this factor when it determined class boundaries. Appellants argued that this practice did not comply with DOE price regulations as they were interpreted in *Mobil Oil Corp. (Mr. Magic Car Wash, Inc.)*, FEA Case # 0277, 1975 CCH Energy Management, Fed. Energy Guidelines ¶ 80,576 at 80,741.

summary judgment must be denied even if no opposing evidence is presented. *Adickes v. S. H. Kress Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). We therefore turn first to appellants' contention that the district court should have granted their motions to strike the affidavits of Ashby and Streets.

## A.   *The Streets Affidavit*

Streets' affidavit makes the following pertinent assertions of fact: (a) that he is the "in house" attorney who has had general legal responsibility for Mobil's compliance with DOE price and allocation control regulations since January of 1974; (b) that the document attached to his affidavit is a true and correct copy of Mobil's current Monthly Cost Allocation Reports filed with the DOE for the reporting periods covering June, 1976, through May, 1979; and (c) that the $385,600,000 entry on the report for May, 1979, states the amount of Mobil's bank of unrecouped costs as of that month.

Appellants raise four principal objections to Streets' affidavit: (1) that there was no showing that it was based upon personal knowledge; (2) that the affidavit does not properly authenticate the reports; (3) that the affidavit fails to lay an adequate foundation to bring the reports within the business records exception to the hearsay evidence rule codified in Fed.R.Evid. 803(6);[15] and (4) that the report entries stating the amount of Mobil's costs bank are inadmissible because they constitute legal conclusions.

█   The district court has broad discretion in ascertaining whether a proper foundation has been laid for admitting business records. *United States v. Patterson,* 644 F.2d 890, 900–01 (1st Cir. 1981); *Rosenberg*

*v. Collins,* 624 F.2d 659, 665 (5th Cir. 1980). To be admissible under Rule 803(6), the documents must satisfy three conditions:

(1) The records must be kept pursuant to some routine *procedure* designed to assure their accuracy, (2) they must be created for *motives* that would tend to assure accuracy (preparation for litigation, for example, is not such a motive), and (3) they must not themselves be mere accumulations of hearsay or uninformed opinion.   (Original emphasis.)

*Rosenberg v. Collins,* 624 F.2d at 665 (quoting *United States v. Fendley,* 522 F.2d 181, 184 (5th Cir. 1975)).

█   We find that the district court did not abuse its discretion in admitting Streets' affidavit and attachments for the purpose of ruling on Mobil's motion for summary judgment.   The very nature of the Monthly Cost Allocation Reports as records that the DOE required Mobil to file with the agency, subject to possible audit, *see* 10 C.F.R. § 210.92, supports the district court's implicit finding that they possessed the requisite indicia of reliability.   To whatever extent the report entries stating the size of Mobil's costs bank may not have satisfied the requirements of Rule 803(6), they would be admissible on the ground that they constitute the best evidence reasonably available on this issue.   Fed.R.Evid. 803(24), 804(b)(5); *Ark-Mo Farms, Inc. v. United States,* 530 F.2d 1384, 1386–87 (Ct. Cl.1976).   The alternative would be to require Mobil to establish the size of its costs bank by introducing copies of all the records containing the raw data upon which it based its computations.   Given the size of Mobil's operations, such a requirement would impose an unjustifiably onerous burden upon Mobil and upon the court charged with the task of reviewing the evidence.

---

**15.**   Fed.R.Evid. 803(6) provides that the following are not excluded by the hearsay rule:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memoran-

dum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.   The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

That Streets had personal knowledge that the documents attached to his affidavit were, as he stated, true and correct copies of Mobil's actual filings with the DOE may be inferred from his position as the "in house" attorney responsible for Mobil's compliance with the agency's price and allocation control regulations. It is not essential that the offering witness be the one who prepared the business records. Any person in a position to attest to their authenticity is competent to lay the requisite foundation for admissibility. *United States v. Jones,* 554 F.2d 251, 252 (5th Cir.), *cert. denied,* 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142 (1977); *see also Continental Casualty Co. v. American Security Corp.,* 443 F.2d 649, 651 (D.C.Cir.1970), *cert. denied,* 402 U.S. 907, 91 S.Ct. 1378, 28 L.Ed.2d 647 (1971) (affidavit of corporate officer adequate to authenticate records with which his duties required him to be familiar).

### B. *The Ashby Affidavits and Attachments*

Two types of factual assertions material to the summary judgment motion appear in the two Ashby affidavits: (1) statements pertaining to the procedures followed by Mobil in determining classes of purchaser and base prices, and (2) statements pertaining to the actual class of purchaser and base price deemed by Mobil to be applicable to appellants. The large majority of Ashby's statements fall into the first category, as do the pricing instructions attached to his first affidavit. Only two of Ashby's assertions fall into the second category: (1) that all of Mobil's supply terminals in the Los Angeles area posted the same prices and (2) that the transactions determining the base price for appellants' class involved "OG&L" dealers only.

It is not clear whether appellants object to the pricing instructions attached to the first Ashby affidavit and his descriptions of Mobil's pricing policies. The thrust of appellants' argument is directed instead at Ashby's assertions that the pricing instructions were faithfully applied in Los Angeles and throughout the United States.

Inasmuch as Ashby is Mobil's officer in charge of formulating policies to implement the DOE's regulations relating to class and base price determinations, he is clearly competent to state what those policies were and whether they were communicated to Mobil's regional pricing managers. The pricing directives are not hearsay insofar as they are used circumstantially to support the inference that the personnel who received these instructions implemented them. *See* McCormick on Evidence § 249 at 589–90 (2d ed. 1972). Accordingly, the pricing instructions attached to Ashby's first affidavit, together with those of his statements that describe Mobil's pricing policies, were sufficient to shift to appellants the burden of producing evidence showing that the policies were not carried out in Los Angeles. Fed.R.Civ.P. 56(e). We therefore need not and do not reach the question of whether Ashby's statements that Mobil's regional personnel actually carried out his instructions were also admissible.

We do, however, hold that Mobil's failure to provide copies of the documents upon which Ashby based his assertions relating to the uniformity of posted prices at Mobil's terminals in Los Angeles and the identity of its customers there who entered into May 15, 1973 transactions precluded the district court from considering this testimony. Rule 56(e) provides that a party filing an affidavit supporting or opposing a motion for summary judgment must simultaneously file "[s]worn or certified copies of all papers or parts thereof referred to in [the] affidavit ...." Fed.R.Civ.P. 56(e). Although there is authority for the proposition that the absence of supporting documents goes only to the affidavit's weight and not to its admissibility, *see United States v. Johns-Manville Corp.,* 259 F.Supp. 440, 458–59 (E.D.Pa.1966), we believe that strict compliance with the clear language of the rule should be required absent a showing that the mentioned documents are so bulky as to make it impracticable or unduly burdensome to provide copies. *See* 6 Pt. 2

Moore's Federal Practice ¶ 56.22[1] at 1328 (2d ed. 1982) and cases cited at n. 53. Mobil made no such showing with respect to the documents from which Ashby derived his information concerning posted prices in the Los Angeles area and participants in May 15, 1973 transactions. These issues will therefore remain proper subjects for further discovery and proof on remand.

Having determined that the district court should only have considered Mobil's evidence relating to its pricing policies and the size of its bank of unrecouped costs, we turn now to the question of whether this evidence is adequate to establish that Mobil is entitled to prevail on appellants' overcharge claim as a matter of law.

## II. Determination of Base Price

Our prior opinion recognized that appellants might be able to establish that the withdrawal of their discounts resulted in overcharges if they could show an overstatement by Mobil of the amount of the base price for their class of purchaser. *Pacific Service Stations Co. v. Mobil Oil Corp.,* 636 F.2d at 310. Appellants contend that Ashby's affidavits and the attached pricing instructions fail to establish the absence of a genuine dispute relating to the correctness of Mobil's computation of appellants' base price because these materials indicate that Mobil's pricing policies were contrary to the applicable regulations in four pertinent respects: (1) in determining classes of purchaser, Mobil disregarded differences in the credit terms it granted its purchasers; [16] (2) in calculating the weighted average selling price for the class, Mobil used normal delivery volumes instead of actual delivery volumes; [17] (3) for transactions based upon variable-price contracts, Mobil deemed the transaction price to be the price it would have charged if a delivery had been made on May 15, 1973, even if the most recent delivery under the contract had occurred prior to that date; [18] and (4) in calculating the price charged in a transaction, Mobil disregarded any competitive discount granted to the purchaser.[19]

Mobil contends that appellants' allegation of ignoring discounts in calculating base prices is founded upon a misreading of its pricing instructions. Mobil does not, however, expressly contest the validity of the remaining three allegations. Instead, it argues that appellants have demonstrated only the abstract possibility of Mobil setting their base price too high. Mobil's use of an erroneous pricing formula might just as readily have resulted in the calculation of a deficient or correct base price as an inflated one. Such an inconclusive showing, says Mobil, is inadequate to withstand a properly supported motion for summary judgment.

While we agree that the burden of production shifts to the party opposing summary judgment once the movant has made a prima facie showing that he is entitled to prevail on an issue as a matter of

---

16. See note 14 *supra.*

Appellants also argue that there is a genuine dispute as to whether or not the discounts constituted a customary price differential. In support of this contention they cite evidence indicating that Mobil considered certain "business criteria," including the volume of the dealer's sales, in determining whether or not to grant a discount. However, our prior opinion laid this issue to rest by holding that the district court had not erred in granting Mobil summary judgment on the question of whether the discounts were *solely* competitive allowances. *See Pacific Serv. Stations Co. v. Mobil Oil Corp.,* 636 F.2d at 307, 309. That holding constitutes the law of the case and therefore precludes the district court from reconsidering its previous ruling on the issue. *See* 1B

Moore's Federal Practice, *supra,* ¶ 0.404[10] at 571–73.

17. DOE Ruling 1979–1 provides that base prices are to be computed from "actual sales" whenever possible. 44 Fed.Reg. 24046. Actual volumes as well as actual prices must therefore be used. The only exception is for variable-price contracts under which no deliveries were made until after May 15, 1973. With respect to such transactions, the Ruling provides that the transaction price should be determined "as if a sale occurred on the day the contract was entered into." Normal delivery volumes should not be imputed under any other circumstances.

18. See note 17 *supra.*

19. See 10 C.F.R. § 212.83(a)(2).

law, Fed.R.Civ.P. 56(e),[20] we find that Mobil has failed to make such a showing with respect to its alleged overstatement of appellants' base price. The non-moving party is entitled to have all of the evidence viewed in the light most favorable to him. *Standard Oil Co. v. D.O.E.,* 596 F.2d 1029, 1065 (TECA 1978). When the evidence is equally consistent with two alternative inferences, the court must draw the one that is more favorable to the non-moving party. On the basis of the evidence properly before the district court, it was just as likely as not that the uncontested errors in Mobil's pricing policies had resulted in the calculation of an inflated base price. Mobil is therefore not entitled to summary judgment on this issue.

We also find that there is sufficient factual support for appellants' allegation that Mobil disregarded discounts in calculating base prices to make this a genuinely disputed issue. The pricing instruction upon which appellants base this allegation reads:

> *BASE PRICE, TYPE A CONTRACTS*[21]
> If the contract price (price called for in the contract) is posted price at time and place of delivery, then the base price, or price to be used in calculating the weighted average base price is the May 15, 1973 posted price, regardless of the contract/transaction date.

RA 850. Appellants all signed Mobil's standard type A contract, which provided that "[p]rices not covered by an attached rider shall be those posted or listed by seller at time and for place of delivery for that class of purchaser in which Buyer shall then fall." RA 521. Mobil's decisions to grant competitive allowances to appellants were memorialized in separate letter agreements and were not attached as riders. *See* RA 511, 539–42. If, therefore, the regional personnel charged with implementing the pricing instructions interpreted "contract price" as referring to the price called for in the contract document itself without regard to any separate written agreements relating to competitive allowances, they would have systematically ignored discounts in calculating base prices. Such a practice would necessarily result in an overstatement of the base price if one or more of the May 15, 1973 transactions involved dealers receiving competitive allowances.[22]

Mobil contends that the above-quoted pricing instruction must be read as applying only to customers who did not receive discounts. The contrary interpretation is, it argues, inconsistent with the reference to "calculating the weighted average base price," because a policy of ignoring discounts would eliminate the need for calculating an average.

This argument is based upon the erroneous assumption that type A contracts were the sole source of transactions used in calculating base prices. The pricing instructions identify two other types of transactions relevant to base price determinations: spot sales and type B contracts.[23] The reference to calculating the weighted average would therefore be consistent with a policy of disregarding discounts, because the May 15, 1973 posted price imputed to transactions involving type A contracts would have to be averaged against prices charged in spot sales and transactions involving type B contracts.

---

**20.** "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed.R.Civ.P. 56(e).

**21.** The pricing instructions identify three basic types of transactions: (1) spot sales, (2) type A contracts, and (3) type B contracts. Spot sales are normally "a one-time type sale, or an occasional buyer, paying the posted price." Type A contracts are governed by "a written executed agreement signed by both Mobil and the customer." Type B contracts are governed by a "quote letter" from Mobil offering gasoline at a certain price for a specified period of time. RA 857.

**22.** *See* note 7 *supra.*

**23.** *See* note 21 *supra.*

III. *Costs Bank Defense*

Appellants appear to concede that the withdrawal of their discounts on May 1, 1979, would not have resulted in an overcharge if Mobil's bank of unrecouped costs for that month was large enough to justify the resulting price increase. They nevertheless argue that the district court erred in accepting the full $385,600,000 figure Mobil reported for its bank.

> The district court apparently compared the cents-per-gallon amount of the price increases in question with Mobil's aggregate nationwide "bank," and, upon determining the latter amount to be larger, concluded there could not have been overcharge.... This mode of analysis is wrong because it fails to take into account Mobil's other retail dealers, Mobil's other purchasers of gasoline, the quantities sold and the restrictions and penalty imposed by the "equal application rule" (10 C.F.R. § 212.83(h)). (Citation omitted.)

Appellants' Opening Brief at 31. Because the parties gave this issue less attention than it appeared to deserve, we requested further briefing on the extent to which an overstatement of the base price for appellants' class of purchaser would have caused Mobil to exaggerate the magnitude of its bank of unrecouped costs.

■ Mobil's supplemental memorandum filed in response to our request for further briefing reiterates Mobil's contention that the record contains no support for appellants' allegation that Mobil overstated their base price. Mobil nevertheless òffers a mode of analysis by which it purports to demonstrate that even a base price error of the greatest magnitude for which there is any support in the record would require only a slight adjustment in its reported bank. Although Mobil did not advance this mode of analysis in the proceedings before the district court, we examine it here because a correct decision may be affirmed on

any basis supported by the record. *United States v. Washington,* 641 F.2d 1368, 1371 (9th Cir. 1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1001, 71 L.Ed.2d 294 (1982).

According to Mobil, if we assumed facts most favorable to appellants, we would place them in their own class of purchaser with a base price reflecting the largest competitive allowance at issue in this litigation: 2.5 cents per gallon. Based upon an estimated total annual sales volume of 11,640,-000 gallons for appellants' service stations, Mobil calculates that it would have understated the costs it actually recovered in price increases by $291,000 per year, for a cumulative total of $2,158,250 by the end of price controls in January, 1981. Inasmuch as an understatement of recovered costs results in an overstatement of unrecouped costs, Mobil's reported bank for January, 1981, would have to be reduced by that amount. Mobil concludes that because $2,158,250 is such a small fraction of the $385,600,000 bank it claims to have accumulated by May, 1979, it is entitled to prevail as a matter of law on its costs bank defense.

We do not agree that Mobil's scenario gives appellants the benefit of all the reasonable inferences to which they are entitled as the parties opposing the motion for summary judgment. First, the assumption that appellants were the only members of the class of purchaser to which they should have been assigned is entirely arbitrary and clearly favors Mobil. In other contexts, Mobil has argued that the class should include all of its retail dealers in the Los Angeles area.[24] If Mobil were shown to have overstated the base price of a class of that size (the full extent and nature of which do not appear from the record), the impact upon its bank would be much more dramatic. Second, Mobil's demonstration fails to address the extent to which it may have overstated base prices of other classes across the nation by reason of its alleged policy to ignore discounts for purposes of calculating base prices.

**24.** Although we have ruled that Mobil's failure to comply with Rule 56(e) precluded the district court from relying upon Ashby's testimony relating to the scope of appellants' class for the purpose of drawing inferences favorable to Mobil, this testimony may be used as an admission by a party-opponent, Fed.R.Evid. 801(d)(2), to support inferences favorable to appellants.

█ Summary judgment procedures should be used with care and restraint.

Although it is proper to resolve even difficult legal issues by summary judgment if the requirements of the Rule have been clearly met, a court "should refuse to grant a motion for a summary judgment until the facts and circumstances have been sufficiently developed to enable the Court to be reasonably certain that it is making a correct determination of the question of law."

*McWhirter Distributing Co. v. Texaco, Inc.*, 668 F.2d at 519 (quoting *N.L.R.B. v. Smith Industries, Inc.*, 403 F.2d 889, 893 (5th Cir. 1968)). Although the vast size of Mobil's reported bank of unrecouped costs for May, 1979, is certainly impressive, considerable doubt surrounds the question of the bank's true magnitude. We therefore cannot say a matter of law that the bank was large enough to justify the price increases occasioned by the withdrawal of appellants' discounts on May 1, 1979. Accordingly, the district court's entry of summary judgment on the basis of Mobil's costs bank defense must be reversed.

### IV. *Rule 56(f) Motion*

█ The hearing transcript indicates that the district court's primary reason for denying appellants' Rule 56(f) motion for a continuance was its belief that Mobil's claim of having banked $385,600,000 in unrecouped costs was unassailable. *See* RA 1416–18. We agree that a court need not allow further discovery when there is no reason to believe that it will lead to the denial of a pending motion for summary judgment. *See* 10 C. Wright & A. Miller, Federal Practice & Procedure § 2740 at 726 (1973). However, in reaching its conclusion that there was no reason to doubt the size of Mobil's reported bank, the district court erroneously failed to consider the cumulative impact of Mobil's alleged errors in computing base prices.

We decline, however, to give specific guidelines as to the full scope of the discovery appellants should be allowed to pursue on remand. The answer to this question will in part depend upon the extent to which Mobil is able to substantiate its claims that it did not ignore discounts in computing base prices and that none of the alleged errors in its pricing policies had any significant impact upon the base price it computed for appellants. Inasmuch as the district court will be in a position to monitor the progress of this case on remand, the task of setting ground rules for further discovery is best left to its discretion.

Reversed and remanded to the district court for further proceedings consistent with this opinion.