**WESTERN MOUNTAIN OIL, INC.,**
**Plaintiff-Appellant,**

v.

**GULF OIL CORPORATION,**
**Defendant-Appellee.**

**No. 9–76.**

Temporary Emergency Court of Appeals.

Argued Sept. 16, 1983.

Decided Dec. 22, 1983.

Neva T. Campbell, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., and John W. Hoffman, Bowen, Swafford & Hoffman, Reno, Nev., were on the brief for plaintiff-appellant.

Bradley Ford Stuebing, The Gulf Companies, Houston, Tex., with whom Robert F. Ochs, Charles O. Murray, III and J. Ronald Sandberg, Houston, Tex., were on the brief for defendant-appellee.

James S. Williams and Michael H. Bonner, Froneberger, Bonner & Zeff, San Francisco, Cal., were on the brief of amicus curiae Paul Lerner d/b/a Lerner Oil Co.

Before GARZA, BROWN and THORN-BERRY, Judges.

GARZA, Judge:

Western Mountain Oil, Inc. ("Western Mountain") brought this action for petroleum pricing overcharges against Gulf Oil Corporation ("Gulf") under the Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C. § 751 *et seq.* and § 210 of the Economic Stabilization Act of 1970 (ESA), as amended, 12 U.S.C. § 1904 (note). The district court, 575 F.Supp. 813, granted summary judgment for Gulf, holding that Western Mountain's action was barred by limitations.

## BACKGROUND FACTS

Western Mountain alleged that from August, 1966, through December 31, 1973, Gulf, a refiner, sold branded grades of motor gasoline to Western Mountain, a gasoline reseller based in Reno, Nevada. Gulf stopped selling branded gasoline to Western Mountain as of December 31, 1973, after having announced its intention to withdraw from marketing in the Pacific Northwest, including northern Nevada. When the mandatory petroleum regulations went into effect in 1973, requiring Gulf to continue supplying its 1972 purchasers, Gulf and Western Mountain entered into a three-year contract whereby Gulf agreed to supply Western Mountain with unbranded gasoline from January 1, 1974, through December 31, 1976.

In computing its prices to Western Mountain for unbranded gasoline, Gulf utilized the prices for May 15, 1973, in *Platt's Oilgram,* a trade newspaper. Gulf did not use these same prices for its other newly unbranded jobbers in northern California, however, which received gasoline from the same Gulf refinery as Western Mountain. Instead, Gulf used the lower May 15, 1973, prices of an existing Gulf unbranded class of purchasers in California. When Western Mountain inquired in December, 1973, as to the manner in which the prices for the unbranded grades of gasoline would be determined, Gulf replied that the prices would be based upon prices in *Platt's Oilgram,* and that the Federal Energy Office (a predecessor of the Department of Energy) had approved this pricing method as being in compliance with the pricing regulations. In truth, this pricing method had received no such approval, a fact which Western Mountain did not learn until January of 1977. Western Mountain also discovered that other former Gulf branded jobbers in California had been assigned lower prices than Western Mountain when Gulf unbranded them.

Western Mountain brought suit against Gulf for these overcharges on December 15, 1977. The district court granted summary judgment for Gulf, holding that Western Mountain's claims were barred by limitations. Applying the most analogous state law of limitations, the court found that the three-year limitations period provided by Nev.Rev.Stat. § 11.190(3)(a) applied to Western Mountain's claim to recover unintentionally imposed overcharges, and that the two-year period provided by Nev.Rev. Stat. § 11.190(4)(b) applied to its claim for intentional overcharges. The district court further found that Western Mountain's causes of action had accrued on January 1, 1974, the date the overcharging began, and thus under federal law the limitations periods began running on that date. Finally, the district court held that Gulf's representations did not amount to a fraudulent concealment of any of the operative facts upon which Western Mountain's claims were based, and that therefore no tolling of the limitations period occurred.

I.

Western Mountain does not dispute the applicability of the Nevada limitations statutes to its claims. Instead, it complains the trial court erred in failing to apply Nevada's time commencement statute together with its limitations statutes. That statute provides that the limitations period begins to run "from the last transaction or the last item charged..." Nev.Rev.Stat. § 11.200. Stated simply, appellant contends that where a state statute of limitations is to be

applied to a cause of action arising under a federal statute, and the federal statute contains no standard governing the running of the limitations period, the state's time commencement statute should control.

■ We disagree. Although Nevada's statute of limitations decides the period of time within which the plaintiff must sue once its cause of action has accrued, "any issue relating to accrual and tolling is governed by federal law." *Ashland Oil Co. of Cal. v. Union Oil Co. of Cal.,* 567 F.2d 984, 988 (Temp.Emer.Ct.App.1977), *cert. denied,* 435 U.S. 994, 98 S.Ct. 1644, 56 L.Ed.2d 83 (1978). Appellant's cause of action under the EPAA is federally-created, and we must look to federal law to determine the point at which a complete cause of action exists upon which the plaintiff may sue. *See, Cope v. Anderson,* 331 U.S. 461, 464, 67 S.Ct. 1340, 1341, 91 L.Ed. 1602 (1946); *Rawlings v. Ray,* 312 U.S. 96, 98, 61 S.Ct. 473, 474, 85 L.Ed. 605 (1941).

## II.

Western Mountain next complains that, even if the issue of accrual is determined by reference to federal law, the district court incorrectly decided that its cause of action against Gulf accrued on the date the overcharging began. Appellant argues that it was overcharged each time it purchased petroleum products from Gulf during the years in question, and that each sale amounted to a violation of the pricing regulations. Western Mountain therefore contends that each sale gave rise to a separate cause of action. Under this theory, the three-year statute of limitations would bar recovery of only those unintentional overcharges occurring more than three years prior to the filing of its complaint in December, 1977. Likewise, the two-year statute would preclude recovery only of intentional overcharges occurring more than two years prior to December, 1977.

In rejecting this theory, the district court based its decision on two cases decided by this Court, *Siegel Oil Co. v. Gulf Oil Corp.,* 701 F.2d 149 (Temp.Emer.Ct.App.1983) and *Shell Oil Co. v. Nelson Oil Co., Inc.,* 627 F.2d 228 (Temp.Emer.Ct.App.), *cert. denied,* 449 U.S. 1022, 101 S.Ct. 590, 66 L.Ed.2d 484 (1980). In *Siegel,* the plaintiff sued Gulf alleging that Gulf improperly substituted Acorn Petroleum, Inc. as the supplier of petroleum products that Gulf was required to supply. The plaintiff contended that each month Gulf had a new obligation to supply petroleum and that a new violation, therefore, occurred each month. This Court, citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), stated that "a cause of action accrues when a defendant commits an act that injures the plaintiff", and held that the decision to designate Acorn as the substitute supplier was that act. 701 F.2d 149 at 153. We therefore rejected the continuing violation theory raised by the plaintiff and held that the action was barred by limitations. We further noted our rejection of this theory in *Shell, supra,* wherein a counterclaim against Shell for improperly modifying its credit terms was held barred by limitations, the "challenged conduct" having occurred on the date that the terms were changed. *Shell Oil Co. v. Nelson Oil Co., Inc.,* 627 F.2d 228, 236 (Temp.Emer.Ct.App.), *cert. denied,* 449 U.S. 1022, 101 S.Ct. 590, 66 L.Ed.2d 484 (1980).

While not contending that *Siegel* and *Shell, supra,* were incorrectly decided, Western Mountain argues that both cases essentially involved single acts of misconduct rather than repeated violations such as the pricing overcharges in this case. Here, asserts appellant, the "act that injures the plaintiff" occurs each time the defendant makes a sale at a price in excess of the maximum allowable price under the regulations. Likewise, *amicus curiae* Paul Lerner argues this distinction between the facts in *Siegel* and *Shell* and the instant case. In support of their arguments, Western Mountain and Lerner both refer to this Court's decision in *Johnson Oil Co., Inc. v. U.S. Dept. of Energy,* 690 F.2d 191 (Temp.Emer. Ct.App.1982). Having determined that Wyoming's two-year statute of limitations applied to Johnson Oil Company's counter-

claim for petroleum pricing overcharges in that case, we reversed and remanded the issue to the district court instructing it to "limit Southwestern's recovery on pricing overcharges to those occurring on or after March 15, 1977, two years before its counter-claim was filed." *Id.* at 196.

 If the case before us was, as was *Johnson, supra,* a "plain" overcharge case, we would find appellant's position acceptable. A fundamental distinction exists, however, in that the overcharges in this case resulted from Gulf placing Western Mountain in an improper class of purchaser, and calculating its May 15, 1973, transaction prices based on that improper classification. The conduct resulting in injury to appellant was this improper classification. As the district court correctly found, all of the requirements for accrual of appellant's cause of action under the facts of this case had been met on January 1, 1974, the date the overcharging commenced as a result of the misclassification.

### III.

Appellant's final argument is that the district court erred in holding that the statute of limitations was not tolled by fraudulent concealment on the part of Gulf. Western Mountain asserts that Gulf's statement that the Federal Energy Office had approved its pricing structure not only deceived Western Mountain as to the propriety of Gulf's pricing practices, but also discouraged any investigation of such practices.

"Where acts causing injury are fraudulently concealed from the injured party or where fraud furnishing the basis of an action is of such nature as to conceal itself, a statute of limitations is tolled until the injured party discovers, or with due diligence could have discovered, the injury." *Ashland Oil Co. of Cal. v. Union Oil Co. of Cal.,* 567 F.2d 984, 988 (Temp.Emer.Ct.App.1977), *cert. denied,* 435 U.S. 994, 98 S.Ct. 1644, 56 L.Ed.2d 83 (1978). Although Gulf's statement was not truthful, it did not result in the concealment of any operative facts underlying appellant's claim. Appellant was

aware of the manner in which Gulf determined the price it charged for its product and was thus capable of determining the legality of that price. While Gulf may have wrongfully asserted the propriety of its pricing method, we do not find that appellant was entitled to blindly rely on that assertion without making any further investigation. Nor do we find the existence of any fiduciary relationship between the parties which might excuse the duty of further investigation.

On the basis of the foregoing opinion, the judgment of the district court is AFFIRMED.