**USA ROOKWOOD CORPORATION,**
**Plaintiff–Appellant,**

**v.**

**ATLANTIC RICHFIELD COMPANY,**
**Defendant–Appellee.**

**Nos. 6–39, C–2–83–0293.**

Temporary Emergency Court of Appeals.

Argued May 25, 1989.

Decided Sept. 26, 1989.

Lawrence D. Walker, Taft, Stettinius, and Hollister, Cincinnati, Ohio, was on the brief, for plaintiff-appellant.

David L. Roll, Alfred M. Mamlet, Steptoe and Johnson, Washington, D.C., and Richard C. Morse and Michael B. Green, Atlantic Richfield Co., Los Angeles, Cal., were on the brief, for defendant-appellee.

Before GRANT, PECK, and BROWN, Judges.

WESLEY E. BROWN, Judge.

This case arises under Section 210 of the Economic Stabilization Act of 1970, 12 U.S.C. Sec. 1904 note. Plaintiff–Appellant Rookwood appeals a judgment entered in favor of the Atlantic Richfield Company ("ARCO"). Rookwood's complaint alleged that ARCO overcharged two firms owned by Rookwood, Houston Oil Company ("HOC") and Oil Transit, Inc. ("OTI"), on sales of motor gasoline from 1977 to 1981. In a series of orders, the district court granted summary judgment on the five claims alleged in Rookwood's complaint.

The district court found that four of the claims were barred by the applicable statute of limitations and that there was no genuine issue of fact on the fifth claim. For the reasons set forth herein, we affirm.

I. *Background*

In order to address the issues raised on appeal, we first review the basic structure of the Mandatory Petroleum Price Regulations ("MPPR"), 10 C.F.R. Part 212, as they applied to refiners.[1] Under the regulations, refiners such as ARCO could not sell covered products to purchasers at a price in excess of the "maximum allowable price." The determination of a maximum price was made with respect to each class of similar purchasers. The maximum allowable price consisted of two components: the weighted average price of the covered product on May 15, 1973, together with certain increased costs to the refiner since May, 1973. Thus, a refiner could generally raise the sales price of its products above the May 15, 1973 price to the extent that the refiner had incurred increased costs. If a refiner did not recoup all of its increased costs through sales in a given month, the regulations allowed the refiner, subject to certain limitations, to "bank" unrecovered costs and recoup them through sales in subsequent months. 10 C.F.R. Sec. 212.83.

Rookwood's amended complaint in this case alleged that the following acts of ARCO resulted in overcharges: (i) ARCO's failure to use actual May 15, 1973 transaction prices and otherwise improper computation of weighted average prices for the motor gasoline which it sold to OTI and HOC on May 15, 1973; (ii) ARCO's failure to place OTI and HOC in the same class of purchaser as similar purchasers of motor gasoline; (iii) ARCO's failure to preserve customary price differentials; (iv) ARCO's failure to comply with the Refiner Price Rules in calculating increased product costs and increased nonproduct costs which could be added to May 15, 1973 selling prices to determine maximum allowable prices; and

---

1. The price controls on petroleum products were terminated on January 28, 1981, pursuant to President Reagan's issuance of Executive Order 12287, 46 Fed.Reg. 9909 (Jan. 30, 1981).

(v) ARCO's violations of the deemed recovery rule.

Rookwood raises three issues on appeal: (1) whether the district court erred by holding that Rookwood's "base price" and "deemed recovery" claims were barred by the statute of limitations; (2) whether the court improperly "split" a single cause of action into several mini-causes of action in applying the statute of limitations; and (3) whether the district court erred in granting summary judgment on Rookwood's increased costs claim (referred to as the "No. 2 distillate claim").

## II. *Statute of Limitations*

The parties stipulated in the district court that the proper statute of limitations in this case was Sec. 2305.07 of the Ohio Revised Code, which provides for a limitations period of six years. Rookwood's complaint was filed in February of 1983, meaning that any claims accruing prior to February 1977 were barred by the statute.[2] After examining the nature of Rookwood's claims, the district court found that all of Rookwood's claims except one had accrued before February of 1977. We find that the district court's handling of Rookwood's claims was correct.

■ Rookwood first argues that, notwithstanding the fact that overcharging commenced on its claims prior to 1977, it is entitled to recover for all overcharges occurring within the limitations period. At the core of this argument is the contention that each alleged overcharge by ARCO constituted a separate and independent cause of action. Rookwood's theory has been dubbed a "continuing violation theory" and has been repeatedly rejected by this court. In *Western Mountain Oil, Inc. v. Gulf Oil Corp.*, 726 F.2d 765 (Temp.Emer.Ct.App. 1983), in which the plaintiff alleged overcharges due to an improper purchaser classification, the court summarized the plaintiff's argument as follows:

> [Plaintiff] argues that it was overcharged each time it purchased petrole-

um products from Gulf during the years in question, and that each sale amounted to a violation of the pricing regulations. Western Mountain therefore contends that each sale gave rise to a separate cause of action. Under this theory, the three-year statute of limitations would bar recovery of only those unintentional overcharges occurring more than three years prior to the filing of its complaint. . . .

*Id.* at 767. We rejected this theory, finding that Western Mountain had but a single cause of action based on Gulf's improper classification and that the cause of action accrued on the date that overcharging commenced as a result of the misclassification. *Id.* at 768. *See also Fleetwing Corp. v. Mobil Oil Corp.*, 726 F.2d 768 (Temp.Emer. Ct.App.1983). A similar argument was also made in *Gulf Oil Corp. v. Dyke*, 734 F.2d 797 (Temp.Emer.Ct.App.1984), *cert. denied*, 469 U.S. 852, 105 S.Ct. 173, 83 L.Ed.2d 108, where the alleged violation was an improperly calculated May 15, 1973 selling price. We again found that any claim for overcharges was barred by the statute of limitations, noting that "in such a case as this, where any overcharges incurred resulted from an initial improper base price, the statute of limitations begins to run from the date of the first overcharge." *Id.* at 809. In the instant case, ARCO presented uncontested evidence to the district court that if Rookwood's contentions were true, overcharges would have resulted well before February 1977— which was the "cut-off" date for statute of limitations purposes. As to Rookwood's base price and class of purchaser claims, then, *Western Mountain* and *Gulf Oil* clearly mandate a finding that such claims are barred by the statute of limitations.

■ In addition to the foregoing claims, the district court ruled that Rookwood's claim that ARCO violated the deemed recovery rule, 10 C.F.R. Sec. 212.83(h) (1979), was also barred by the statute of limitations. We find that the district court's

---

**2.** Rookwood has voluntarily abandoned its allegation in the original complaint that ARCO's

conduct tolled the statute of limitations.

ruling on this issue was a correct application of the rule set forth in *Go–Tane Service Stations v. Clark Oil & Refining*, 798 F.2d 481, 484 (Temp.Emer.Ct.App.1986), *cert. denied*, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 704.

On prior occasions, this court has examined the effect of the deemed recovery rule:

> Under the deemed recovery rule ... the refiner had to pass through increased product costs uniformly among all classes of purchasers or suffer a cost recovery penalty. Specifically, each month the refiner was required to compute its banks of unrecovered costs as though it had charged *all* classes of purchaser the largest increment of increased costs it charged to any one class of purchaser, even though, in fact, it did not. If a refiner applied increased costs unequally, thus, it had to reduce its bank of previously unrecouped costs by an amount that was larger than the amount of increased costs actually recouped. The refiner, that is, was "deemed" to have recovered costs it, in fact, did not.

*Mobil Oil Corp. v. Department of Energy*, 728 F.2d 1477 (Temp.Emer.Ct.App.1983), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3545, 82 L.Ed.2d 849 (1984).

The record before us indicates that in 1975 ARCO established a uniform pricing system under which all of ARCO's prices were set by a central pricing authority. In order to monitor compliance with this system, ARCO developed a computer program to determine whether prices set by ARCO's pricing authority were the same as the prices set forth in customer invoices. Whenever these two prices did not match, a "sales exception report" was printed out detailing the difference. In determining the cost increments on its prices under the MPPR and in calculating the resulting cost banks, ARCO apparently used those prices issued by its pricing authority rather than the prices that were reflected in the sale exception reports. Rookwood argues that this method of calculating cost banks violated the deemed recovery rule and resulted in the overstatement of ARCO's banks by hundreds of millions of dollars.[3]

In *Go–Tane Service Stations v. Clark Oil & Refining*, 798 F.2d 481 (Temp.Emer. Ct.App.1986), we stated that the statute of limitations "begins to run when an act with decisive continuing effect causes initial injury at a given time, and the statute is not tolled with respect to continued injury of similar character following from the same act." *Id.* at 484. In this case, the district court correctly concluded that ARCO's implementation of its method of computing recovered costs constituted the requisite act with decisive continuing effect for purposes of the statute of limitations. It is apparent that this pricing practice was adopted by ARCO in 1975 and, if plaintiff's allegations are correct, resulted in overcharges to Rookwood shortly thereafter. The situation here is analogous to *Western Mountain*, where continuing overcharges resulted from the refiner's initially improper class of purchaser determination. The source of the injury in the present case, the overstatement of ARCO's cost banks, was a direct result of ARCO's 1975 method of computing cost recoveries. This pricing practice, once adopted, was used continuously throughout the period of price regulation to calculate cost banks. *Cf. Siegel Oil Co. v. Gulf Oil Corp.*, 556 F.Supp. 302 (D.Colo.1982) (The limitations period commences at the time of the act causing injury to the plaintiff's business or property, even though the damages resulting therefrom may continue beyond that time.) This initial determination, like the one in *Western Mountain*, had a decisive continuing effect. Rookwood's complaint regarding

3. ARCO's pricing system was ostensibly designed to comply with the deemed recovery rule by insuring that all price increases were uniform. ARCO maintains that the rule was complied with because the price committee's determinations were binding on all sales personnel. ARCO asserts that the sales exception reports were largely a result of data entry errors or differences in customer base prices, while Rookwood contends that the reports show that some cost increments were applied unevenly to ARCO's purchasers. Because the matter is before us on ARCO's motion for summary judgment, we assume that Rookwood's contention is correct.

this practice, filed eight years after the fact, is barred by the statute of limitations. To hold otherwise would be to endorse the continuing violation theory that this court has so often rejected. *See Oerther v. Pennzoil Co.*, 763 F.2d 420 (Temp.Emer.Ct. App.1985) *and cases cited therein.*

This result is supported by the record before us, which includes the uncontested affidavits of former officers of Rookwood. These affidavits disclose that Rookwood was aware by 1975 that many of ARCO's practices were not in compliance with the MPPR. Rookwood's officers made a deliberate decision, however, to refrain from investigating allegations concerning ARCO's practices and to avoid bringing suit against ARCO. This was apparently an effort on Rookwood's part to maintain good business relations with its suppliers. A timely suit filed in 1975, however, would have prevented the many years of overcharges that Rookwood contends resulted from ARCO's method of calculating cost banks. Although Rookwood's decision not to pursue its claims may have been sound business practice, it was contrary to the policy behind the statute of limitations, which seeks to promote the timely filing of claims.

Rookwood's reliance on *Johnson Oil Co. v. Department of Energy*, 690 F.2d 191 (Temp.Emer.Ct.App.1982) is unavailing. In *Johnson*, TECA found that the statute of limitations barred most of the claims asserted by a third-party plaintiff but remanded the case to the district court with instructions to limit the third party's recovery to those overcharges that occurred within two years (the limitations period) of the filing of the claim. Although this remand could be construed as supporting Rookwood's theory, subsequent TECA decisions have repeatedly distinguished the *Johnson* case. *See Western Mountain Oil, Inc. v. Gulf Oil Corp.*, 726 F.2d 765 (Temp.Emer.Ct.App.1983). *See also CPI Crude, Inc. v. Coffman*, 776 F.2d 1546, 1552 (Temp.Emer.Ct.App.1985) ("Whatever support this remand [in *Johnson* ] may lend to plaintiff's contention that each overcharge constitutes a separate cause of action has been seriously undermined by sub-sequent holdings of this court.") We have also discounted the significance of the remand in *Johnson*, noting that the court was not squarely faced with the issue of whether repeated overcharges constitute separate causes of action. *Id.* at 1553. Rookwood simply fails to offer any meaningful distinction between its case and our decisions subsequent to *Johnson*—such as *Western Mountain, Fleetwing, CPI Crude, Oerther,* and *Go–Tane.*

■ Rookwood also argues that the district court erred by "splitting" a single claim for overcharges into several causes of action. This argument is without authority and is unpersuasive. The district court correctly examined the underlying cause of the overcharges alleged by Rookwood, barring those claims that had accrued prior to the limitations period. *Cf. Go–Tane*, 798 F.2d at 484. If the district court were unable to deal separately with the underlying causes giving rise to overcharges, a plaintiff could resurrect a time-barred claim merely by including it with a timely claim. Such a result is incompatible with this court's decisions in *Western Mountain* and *Go–Tane.*

### III. *"No. 2 Distillate" Claim*

■ Rookwood's final contention is that district court erred in granting summary judgment on the No. 2 distillate claim, set forth in section (iv) of the complaint. Under this claim, Rookwood alleged that in 1979 ARCO improperly reallocated $51 million in costs from No. 2 distillate oils to motor gasoline, thereby inflating its cost figures and overcharging Rookwood. ARCO moved for summary judgment on this claim, contending that it had sufficient cost banks to offset any error arising from the reallocation. Both parties agree that this claim is not barred by the statute of limitations.

ARCO relied on the affidavits of Steven Swanson, a computer programmer formerly with the DOE, to show that ARCO's cost banks were sufficient to prevent any overcharges. Although Rookwood initially filed an affidavit contradicting ARCO's cal-

culations, the affidavit was subsequently stricken from the record by the district judge. Rookwood raises no objection to the striking of this affidavit.[4] The trial court found that ARCO had demonstrated the absence of a genuine factual issue on the No. 2 distillate claim, but, in view of its ruling striking Rookwood's affidavit, the court granted Rookwood twenty days to file additional affidavits. Rookwood failed to file any affidavits contradicting ARCO's calculations.

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Under this rule, the initial burden is on the moving party to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party's burden may be met by identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* 477 U.S. at 323, 106 S.Ct. at 2552. Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The February 12, 1988 and May 2, 1988 affidavits of Steven Swanson are sufficient to demonstrate the absence of a genuine issue of material fact on Rookwood's No. 2 distillate claim. Based upon monthly cost allocation reports, Mr. Swanson calculated that throughout the relevant period ARCO had sufficient cost banks to prevent any overcharges arising from the 1979 reallocation of No. 2 fuel costs. The affidavits purport to be computed in accordance with the relevant provisions of the MPPR. Significantly, Mr. Swanson's calculations assumed the correctness of several of Rookwood's arguments, including Rookwood's contention that ARCO must calculate its cost banks using an April 1974 "V factor" that was later declared invalid. *See Mobil Oil Corp. v. Department of Energy,* 610 F.2d 796 (Temp.Emer.Ct.App.1980). In light of the fact that these cost banks were available to ARCO to increase its selling prices, the district court correctly concluded that there was an absence of evidence in the record showing that the reallocation of No. 2 fuel costs caused ARCO's prices to exceed the maximum allowable price. Also, in addition to ARCO's calculations, the record before us contains the results of an extensive DOE audit of ARCO's compliance with the MPPR. We note that DOE estimated ARCO's cost banks to be close to $400 million during the latter part of 1975 and at least $100 million at all times thereafter. (Rec.Vol. V, p. 5887)[5]

Rookwood's general denial of ARCO's calculations is not sufficient to meet its burden under Rule 56. Once the moving party has demonstrated the absence of an issue of fact, Rule 56(e) requires the non-moving party "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. In this case, the district court specifically granted Rookwood additional time to demonstrate a factual issue with regard to the cost banks. Rookwood, how-

---

4. Although the record is not entirely clear, it appears that the affidavit was stricken from the record either on the grounds that the affiant had entered into an improper contingency fee arrangement for his testimony or because his testimony would have been prejudicial to ARCO since Rookwood had previously indicated that the affiant would not be a witness. The motion to strike, was not opposed by Rookwood. (Rec. Vol. IV, p. 4374).

5. Although there is some intimation in the record that DOE did not strictly apply the deemed recovery rule in calculating these cost banks, we believe that this fact is immaterial to the present inquiry. Rookwood may not assert the deemed recovery rule as a basis for reducing ARCO's cost banks because that claim is barred by the statute of limitations.

ever, failed to respond.[6] This omission is fatal to Rookwood's claim. *See Longview Refining Co. v. Shore,* 554 F.2d 1006, 1011 (Temp.Emer.Ct.App.1977) (Plaintiffs have the burden to provide the specific data needed to prove the existence of an overcharge.) Similarly, Rookwood's argument that the record, by itself, demonstrated an issue of fact is unpersuasive. We have carefully reviewed the record before us and have found nothing therein to contradict the affidavit of ARCO. Rookwood could not prevent summary judgment simply by dumping hundreds of pages of cost figures into the lap of the district court. The burden was on Rookwood to come forward with evidence showing that ARCO's cost banks were not sufficient to prevent overcharges. Fed.R.Civ.P. 56(e) ("[T]he adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. *If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.*") (Emphasis added).

Rookwood cites *Pacific Service Stations Co. v. Mobil Oil Corp.,* 689 F.2d 1055 (Temp.Emer.Ct.App.1982) to support its argument that summary judgment is inappropriate in this case. We believe, however, that *Pacific Service Stations* is distinguishable in several respects. First, the *Pacific* case was decided prior to the Supreme Court's ruling in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), in which the court clarified the respective burdens on the moving and nonmoving party under Rule 56. The *Celotex* court made clear that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's

case." *Id.* 477 U.S. at 325, 106 S.Ct. at 2553. Second, the *Pacific* court found summary judgment inappropriate at least in part because the extent of the cost bank error committed in that case was not clear from the record. *See Pacific Service Stations,* 689 F.2d at 1065 (The full extent and nature of the violations committed by Mobil do not appear in the record, thus, the impact upon Mobil's cost banks could be much more dramatic than Mobil indicates). In contrast, there is only one error alleged in the present claim: that ARCO improperly reallocated $51 million in No. 2 fuel costs. Thus, there is no need to guess as to the extent of the error in this case; the impact of the alleged error on ARCO's cost banks may be determined with accuracy from the record before us. Third, in *Pacific* the court found that the level of the refiner's cost banks was surrounded by "considerable doubt." *Id.* at 1066. This doubt was also due to the uncertain extent of Mobil's violations. Again, the record before us shows the extent of ARCO's alleged violation. ARCO's calculation of its cost reserves are based upon the refiner's monthly cost allocation reports, which are also in the record before us. Furthermore, ARCO's contention that its cost banks were sufficient to prevent overcharges is bolstered by DOE's independent audit and resulting calculations of the bank levels. Finally, this case is markedly different from *Pacific* in that ARCO, in calculating its cost banks, assumed the correctness of Rookwood's major contentions regarding the tabulation of the banks. *Cf. Pacific,* 689 F.2d at 1065 ("Mobil's scenario [does not give] appellants the benefit of all the reasonable inferences to which they are entitled....") Despite this, ARCO's calculations showed no overcharges from the No. 2 distillate cost reallocation. Given all of the foregoing factors, we find that this

---

**6.** Rookwood did file a motion for extension of time in which to provide affidavits. The motion was filed out of time, however, and the district court found no "excusable neglect" for the late filing. *See* Fed.R.Civ.P. 6(b)(2). We find no abuse of discretion in the district court's ruling. *See e.g., Clinkscales v. Chevron U.S.A.,* 831 F.2d 1565, 1569 (11th Cir.1987) (The fact that counsel has a busy schedule does not establish excusable

neglect under Rule 6(b)(2). Likewise, we find no error in the apparent refusal of the district court to consider Rookwood's September 2, 1988 "submission." *See Davidson v. Keenan,* 740 F.2d 129, 132 (2nd Cir.1984) (District court did not abuse its discretion in declining to consider out-of-time filings in opposition to summary judgment.)

case is distinguishable from *Pacific Service Stations* and that, under the circumstances, the burden shifted to Rookwood to demonstrate that a material issue of fact remained for trial. When Rookwood failed to do so, the trial court properly entered summary judgment in favor of ARCO.

■ Lastly, Rookwood contends that it was inappropriate for ARCO to have an expert witness calculate the level of cost banks available to ARCO. (*citing MGPC, Inc. v. Canadian Hidrogas Resources*, 725 F.2d 1376, 1378–79 (Temp.Emer.Ct.App.), *cert. denied*, 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983)). We note that Rookwood only advanced this argument after the affidavit of its own expert witness was stricken from the record. At any rate, the *MGPC* case does not prohibit expert testimony of the type presented in this case. The lengthy and complex factual determinations involved in the refiner price rule are appropriate subjects for calculation by computer programmers or CPA's. *Cf. Kickapoo Oil Co. v. Clark Oil & Refining Corp.*, 788 F.2d 11 (Temp.Emer.Ct.App. 1985). This practice does not run afoul of the *MGPC* case, which held that it was error for a district court to treat the interpretation of the regulations as a question of fact to be proved by the evidence. *Id.* at 1379.

ARCO has also argued that in determining its banked unrecovered costs it is entitled to recalculate its "V factors" in order to retroactively allocate exempt product costs to covered products. (*citing Mobil Oil Corporation v. Department of Energy*, 610 F.2d 796 (Temp.Emer.Ct.App.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980), and subsequent decisions). This issue is currently before another panel of this court in *Van Vranken v. Atlantic Richfield Company*, TECA No. 9–101. In view of our disposition of this case, we do not reach the "V factor" issue.

The judgment of the district court is AFFIRMED.