INTERNATIONAL DRILLING &
ENERGY CORPORATION,
Plaintiff–Appellant,

v.

James WATKINS, Secretary of Energy;
United States Department of Energy;
George B. Breznay, Director of the Office of Hearings and Appeals; and Office of Hearings and Appeals, Defendants–Appellees.

No. 3–57.

Temporary Emergency Court of Appeals.

Argued May 15, 1990.
Decided Sept. 12, 1990.

15

Richard A. Drom, Grove, Jaskiewicz, Gilliam and Cobert, Washington, D.C., with whom Craig W. Hulvey of the same firm was on the brief, for plaintiff-appellant International Drilling and Energy Corp.

Don W. Crockett, U.S. Dept. of Energy, Washington, D.C., with whom Marc Kasischke of the same office was on the brief, for defendants-appellees U.S. Dept. of Energy, et al.

Before CHRISTENSEN, GRANT * and THORNBERRY, Judges.

PER CURIAM.

Plaintiff–Appellant International Drilling and Energy Corporation [IDEC] filed a complaint against the Department of Energy [DOE] in the United States District Court for the District of Delaware, seeking judicial review of a final order by the DOE's Office of Hearings and Appeals [OHA] denying IDEC's refund application. The district court granted the summary judgment motion of the defendant DOE on October 25, 1989. For the reasons explained below, we affirm the decision of the district court.

*Background*

On January 10, 1983, the DOE entered into a Consent Order with Petrolane–Lomita Gasoline Company and its parent, Petrolane Incorporated [Petrolane], settling all claims of Petrolane's alleged violation of the federal petroleum allocation and pricing regulations. Under the terms of that Order, Petrolane transferred over $3 million into an escrow fund to compensate its injured customers. In order to disburse those funds to the victims of the violations, the Office of Hearings and Appeals implemented Subpart V procedures pursuant to 10 C.F.R. Part 205 for the submission and review of claims [1]. IDEC, a propane resell-

* Due to a temporary illness, Judge Grant was unable to be present for oral argument. However, he studied the briefs as well as the taped recording of the oral argument and joins in this opinion.

1. 10 C.F.R. § 205.280 provides:

er that purchased propane from Petrolane and resold it to residential customers, filed a formal refund application on January 16, 1987, claiming that it was injured by Petrolane's failure to supply it with 14 million gallons of propane and seeking over $1.4 million in restitution.

In its Order of October 20, 1988, the OHA rejected IDEC's application because IDEC had failed to meet the DOE's 2-prong test of proving both a supplier/purchaser relationship with Petrolane and injury caused by the alleged violations. *Petrolane–Lomita Gasoline Company/International Drilling and Energy Corp.*, 18 DOE ¶ 85,091 (1988).

> Initially, an allocation claimant must demonstrate the existence of a supplier/purchaser relationship with the consent order firm during the consent order period. *See* 10 C.F.R. § 211.9. We also have stated that "[i]t is advisable to presume that any party claiming injury due to alleged allocation violations who had not previously notified the Department of Energy or otherwise sought redress was not injured by the allocation violation." *OKC Corp.*, 9 DOE ¶ 82,531 at 85,268.

18 DOE at 88,152. Specifically, the agency found that there was no basis in the record for claiming a supplier/purchaser relationship prior to August 4, 1975. Even though IDEC had entered into a contract in 1972 with another reseller, H.W. Lemens, to purchase certain assets, the OHA noted that the contract did not include the acquisition of Lemens' propane allocation from Petrolane. It was not until the Region VI Office of the Federal Energy Administration [FEA] issued an order on August 4, 1975, releasing Petrolane from its obligation to supply Lemens and directing it to supply IDEC instead that Petrolane had a direct obligation to supply propane to IDEC. Therefore, with the FEA order of August 4, 1975, the required supplier/purchaser re-

lationship was established and the first prong of the test was met. *Id.* at 88,153.

Turning then to the period following that date, the OHA considered whether the applicant had demonstrated that Petrolane's alleged failure to supply IDEC with propane caused IDEC any injury. It found no evidence in the record that IDEC had filed a contemporaneous complaint against Petrolane alleging an allocation violation, and thereupon concluded that IDEC did not rebut the presumption that a party failing to make a contemporaneous complaint of injury was not in fact injured by the alleged violation. *Id.* Without evidence of a complaint or a credible showing of injury, the OHA concluded that the record did not establish injury to IDEC as a result of Petrolane's alleged allocation violation, and denied IDEC's application in its entirety. *Id.* at 88,153–54.

Following this decision, IDEC sought reconsideration by presenting documentation of an April 1977 complaint it had filed with the DOE against Petrolane. With this new submission before it, the OHA again reviewed all the evidence presented by IDEC. 19 DOE ¶ 85,004 (1989).

> As we pointed out in *IDEC*, an allocation claimant must demonstrate (i) the existence of a supplier/purchaser relationship, (ii) a colorable claim that an allocation violation occurred and (iii) injury as a result of the failure to receive its allocated volume of regulated products. *See id.*, 18 DOE at 88,152.

19 DOE at 88,007. However, on June 1, 1989, the OHA denied IDEC's motion for reconsideration. 19 DOE at 88,013. It rejected IDEC's renewed claim of a supplier/purchaser relationship with Petrolane prior to August 4, 1975, finding once more that the Federal Energy Administration's formal transfer of the propane allocation to IDEC on August 4, 1975 had created the beginning of Petrolane's obligation to IDEC. 19 DOE at 88,009.

This subpart establishes special procedures pursuant to which refunds may be made to injured persons in order to remedy the effects of a violation of the regulations of the Department of Energy. This subpart shall be applicable to those situations in which the Department of Energy is unable to readily identify persons who are entitled to refunds specified in a Remedial Order, ... or to readily ascertain the amounts that such persons are entitled to receive.

As to the post–1975 period, however, IDEC's documentation of the April 1977 complaint filed against Petrolane, together with the DOE's response, was considered sufficient proof of a contemporaneous complaint. This evidence was a proper rebuttal of the presumption incorporated in the OHA analysis of applications that a claimant with no previous complaint was not injured. Nevertheless, according to the OHA, IDEC was still unable to present a colorable claim of actual violation.

> [T]he mere fact that such a complaint was filed does not establish the validity of the claim for purposes of a special refund proceeding or necessarily entitle the applicant to a refund. As we have repeatedly pointed out, the applicant must show not only that it filed a complaint, but also the claim itself must be "colorable" and not "spurious." *UTP*, 14 DOE at 88,306; *Tenneco Oil Co./Kern Oil & Refining Co.*, 10 DOE ¶ 85,003 (1982).

19 DOE at 88,010. The evidence proffered by IDEC included a letter from DOE administrator Wayne Gifford responding to the complaint by analyzing IDEC's claim. The correspondence described the DOE investigation, the IDEC and Petrolane records Gifford reviewed, and his reasons for concluding that Petrolane did not deliver product to IDEC for a limited period because IDEC had an outstanding balance owed. *Id.* at 88,010. The OHA pointed out that such a justification for refusing product was proper under the DOE regulations found at 10 C.F.R. § 210.62(d).[2]

When the agency reviewed the records of IDEC purchases reflecting other time periods, it found that IDEC never formally demanded product from Petrolane, and did obtain propane from other suppliers. It also discovered that, in some years, IDEC was not purchasing the full volume of propane to which it was entitled. With this information, the OHA concluded that IDEC made internal business decisions not to purchase propane, and could not now claim that Petrolane failed to supply product to

IDEC. Without a showing in the record of IDEC's demand for propane or Petrolane's improper refusal to sell it, the OHA found that IDEC failed to show a colorable claim of actual allocation violation in connection with the contemporaneous complaint. It therefore denied IDEC's motion for reconsideration. *Id.* at 88,012.

IDEC instituted a civil action against the DOE in federal district court on March 15, 1989. On October 25, 1989, the district court dismissed IDEC's complaint by granting summary judgment in favor of the DOE. The court found that the OHA's decisions were not made in a manner that exceeded its authority and were supported by substantial evidence. Moreover, agreeing with the OHA that the plaintiff failed to meet its burden of persuasion, the court found that there was a rational basis for the OHA's conclusion that the applicant had not submitted sufficient evidence of its injury as required. It is this ruling that IDEC now challenges on appeal.

### Standard of Judicial Review

■■■ We begin our consideration of this appeal by setting out the standards clearly established for such a review. An appellate court's examination of the summary judgment determination of the district court below is a *de novo* review of the record and controlling law. *Behm Family Corp. v. Department of Energy*, 903 F.2d 830, 833 (TECA 1990); *Hatoff v. Texaco Inc.*, 889 F.2d 1102, 1103 (TECA 1989). Under this scope of review, no particular deference is accorded to the conclusions of the district court; we are free to make an independent determination of whether the agency's action was reasonably supported by the administrative record. *Amoco Corp. v. Department of Energy*, 912 F.2d 472, 474–75 (TECA 1990); *County Fuel Co., Inc. v. Department of Energy*, 829 F.2d 44, 44–45 (TECA 1987); *Mobil Oil Corporation v. Department of Energy*, 728 F.2d 1477, 1486 (TECA 1983), *cert. denied, Murphy Oil Corp. v. Naph–Sol*

**2.** 10 C.F.R. § 210.62(d) provides: "(N)othing in this paragraph shall be construed to require suppliers to sell to purchasers who do not ar-

range proper credit or payments for allocated products. . . ."

*Refining Co.*, 467 U.S. 1255, 104 S.Ct. 3545, 82 L.Ed.2d 849 (1984) (Mobil II).

■ Considering the agency action on the identical basis as did the district court, therefore, we examine the full administrative record of the OHA that was before the district court. *See Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Citizens To Preserve Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *U.S. Department of Energy v. Brimmer*, 776 F.2d 1554, 1559 n. 1 (TECA 1985), *cert. denied sub nom. Inexco Oil Co. v. Department of Energy*, 475 U.S. 1045, 106 S.Ct. 1261, 89 L.Ed.2d 571 (1986). Our review is limited to the record compiled at the administrative level; no new record is made in the reviewing court. *Camp v. Pitts, supra; see also Federal Power Commission v. Transcontinental Gas Pipe Line Corp.*, 423 U.S. 326, 331, 96 S.Ct. 579, 582, 46 L.Ed.2d 533 (1976) (per curiam); *Department of Energy v. Osborn*, 760 F.2d 282, 283 (TECA 1984).

■ Judicial review of an administrative order of the DOE is statutorily established by the Economic Stabilization Act of 1970 [ESA]. Section 211(d)(1) of the ESA provides that no order shall be set aside "unless a final judgment determines that such order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence." 12 U.S.C. § 1904 note, incorporated by reference into the Emergency Petroleum Allocation Act of 1973 [EPAA], 15 U.S.C. § 754(a)(1).[3] The court's role in this judicial review is guided by certain well-settled principles:

> A court should recognize the administrative expertise of an agency decisionmaker and consequently accord the agency's determination "great deference." *Exxon Corp. v. DOE*, 802 F.2d 1400, 1407 (TECA 1986) (citing *City of Long Beach v. DOE*, 754 F.2d 379, 386–87 (TECA

1985)). Thus "the judicial role requires approval of the DOE's decision if there is a rational basis for it." *Thriftway Co. v. DOE*, 867 F.2d 1577, 1580 (TECA 1989). *Behm*, 903 F.2d at 833.

### Burdens of Proof

A claimant seeking a portion of restitutionary funds being held in escrow for distribution to injured persons must demonstrate its entitlement to the refund. First in the administrative process below, the Subpart V proceeding before the OHA, a claimant has the burden of presenting sufficient evidence to demonstrate a colorable claim to a refund. *See, e.g., Hatoff*, 889 F.2d at 1103 (plaintiffs have burden of proving that discount was justified); *USA Rookwood Corp. v. Atlantic Richfield Co.*, 888 F.2d 846, 852 (TECA 1989) (plaintiff must show insufficient cost banks); *Kickapoo Oil Co. v. Clark Oil & Refining Co.*, 788 F.2d 11, 20 (TECA 1985) (plaintiff must provide specific data proving the existence of an overcharge).

In an allocation refund proceeding such as the one presently before us, an applicant wishing to qualify for restitution based on a claim of allocation violations is required to demonstrate to the OHA the existence of a supplier/purchaser relationship during the consent order period, and injury as a result of the allocation violation. *See Atlantic Richfield Co. v. Department of Energy*, 618 F.Supp. 1199, 1210 (D.Del.1985); *Union Texas Petroleum Corp./Petroleum Supply, Inc.*, 14 DOE ¶ 85,163 (1986); *Thompson Oil Co. et al.*, 13 DOE ¶ 85,126 (1985). The applicant must also rebut the presumption established by the OHA that a claimant with no previous complaint was not injured. *See* 10 C.F.R. §§ 205.282(e), 211.

■ An applicant who is not successful before the agency may seek judicial review of the agency's decision in federal court.

---

3. Section 211(d)(1) also provides the standard of review for the agency's promulgation of a regulation. It states that no regulation is to be set aside "unless a final judgment determines that the issuance of the regulation was in excess of the agency's authority, was arbitrary or capricious, or otherwise was unlawful under the criteria set forth in Section 706(2) of Title 5 of the United States Code." *See Mobil Oil Corp. v. Department of Energy*, 728 F.2d 1477, 1485–86 (TECA 1983).

The party complaining of an administrative order by the DOE bears the burden of establishing by a "clear showing" that the order exceeded the agency's authority or was based upon findings not supported by substantial evidence, as required under ESA § 211(d)(1). *Behm*, 903 F.2d at 835; *Powerine Oil Co. v. Federal Energy Administration*, 536 F.2d 378, 387 (TECA 1976). *See also Exxon Corp. v. Department of Energy*, 601 F.Supp. 1395, 1408 (D.Del.1985); *New England Petroleum Corp. v. Federal Energy Administration*, 455 F.Supp. 1280, 1308 (S.D.N.Y.1978).

If the applicant-plaintiff is challenged with a motion for summary judgment from the agency, the burden of proof again changes. Summary judgment is granted only when there is no genuine issue of material fact and when the prevailing party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *McWhirter Distribution Co., Inc. v. Texaco, Inc.*, 668 F.2d 511, 519 (TECA 1981). Once the moving party has demonstrated the absence of an issue of fact, the burden of proof shifts to the non-movant to come forward with evidence showing a disputed fact. Rule 56(e) requires the nonmoving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *USA Rookwood Corp.*, 888 F.2d at 851, citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

### IDEC's Claims

Appealing the district court's ruling in this court, IDEC asserts that there are genuine issues of material fact that preclude summary judgment: (1) whether a supplier/purchaser relationship existed during the period prior to August 4, 1975; (2) whether IDEC properly presented a colorable claim; and (3) whether IDEC's "credit problems" justified Petrolane's failure to provide product to IDEC. IDEC argues that, inasmuch as these material facts are clearly disputed and there is not substantial evidence in support of the DOE's conclusions, the summary judgment determination must be reversed.

In this appeal IDEC points to evidence already in the record, documents and affidavits that had been weighed by the OHA and found insufficient. It contends that, because the record proves IDEC's allegations rather than the OHA's findings, the OHA's conclusions were arbitrary and not supported by substantial evidence. IDEC asks this court to overturn the district court's determination so that it can present evidence to the district court regarding these disputed facts and can offer whatever new evidence it may collect from the DOE during discovery, evidence that will complete the administrative record compiled by the DOE and will indicate whether the DOE's decisions were supported by substantial evidence.

### Analysis

We first address IDEC's claim that it should have been able to engage in discovery at the district court level in order to complete the administrative record. As a general rule, this court's review is restricted to the record compiled in the administrative proceeding below. *Department of Energy v. Osborn*, 760 F.2d at 283. IDEC has not pointed out factual deficiencies or unconsidered evidence before the agency, and has not alleged cursory treatment in the decisionmaking process or bad faith on the part of the agency. After reviewing the two Orders in which the OHA considered and reconsidered IDEC's claims, we find that the decisions were made with thoroughness and were fully based on the evidence submitted by IDEC that comprised the record in the administrative proceeding. Basing our review on that record, we uphold the district court's denial of IDEC's discovery motions.

The court next considers the threshold issue vigorously contested herein, the proper standard of judicial review. At oral argument the parties focused particularly on whether the applicable test to be considered was the "substantial evidence" or the "rational basis" standard. IDEC argued that the OHA Orders must be supported by substantial evidence and not simply have a rational basis for it. The DOE's

position was that agency orders are reviewed for a rational basis, and that only adversarial adjudicatory hearings are governed by the substantial evidence test.[4]

■ The answer, as stated succinctly by this court during oral argument, is that both tests apply to judicial review of a Department of Energy decision. Under § 211(d) of the Economic Stabilization Act an order may be enjoined or set aside only upon a final determination that the agency's findings were *not supported by substantial evidence.*[5] A regulation may similarly be enjoined or set aside if its issuance was *unsupported by substantial evidence* pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(E).[6] This statutory mandate, while relatively explicit, prescribes a test that may be open to different meanings. In *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Supreme Court considered the meaning of the term "substantial evidence" found in 5 U.S.C. § 706(2)(E).[7]

> Judicial review of agency action ... regularly proceeds under the rubric of "substantial evidence" set forth in the Administrative Procedure Act, 5 U.S.C. § 706(2)(E). That phrase does not mean a large or considerable amount of evidence, but rather, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* at 564–65, 108 S.Ct. at 2550, citing *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). Following this guidance the Court rejected the interpretation that "substantial" is a midpoint that is more than "merely reasonable" and less than "clearly and convincingly justified."[8] *Id.* 487 U.S. at 566–68, 108 S.Ct. at 2550–51.

It is evident that IDEC has considered "substantial evidence" to be a quantitative test, a measurement of a large amount of evidence. The Supreme Court expressly denied that meaning. And this TECA court has explicitly defined substantial evidence as "such relevant evidence 'as a reasonable mind would accept as adequate to support a conclusion.'" *Department of Energy v. Osborn,* 760 F.2d at 283, citing *Consolidated Edison Co.,* 305 U.S. at 229, 59 S.Ct. at 217.

By splicing the Supreme Court definition into the language of § 211(d), we can see more exactly what is required under the statutory standard of review presented in the ESA: No order shall be set aside un-

---

4. The DOE urges us to follow the holding and reasoning of *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), which interpreted judicial review of agency actions pursuant to 5 U.S.C. § 706(2). In addressing those standards, the Court stated that the "substantial evidence" test was to be used only in narrow, specifically limited situations such as the review of agency actions pursuant to rulemaking or following a public adjudicatory hearing. 401 U.S. at 414–15, 91 S.Ct. at 822–23. However, the DOE seems to overlook the fact that the statutory mandate of § 211(d) of the ESA expressly requires proof that the agency's findings were not supported by substantial evidence before the order will be set aside.

5. We have not discussed the second test for setting aside or enjoining an order, proof that the order was in excess of the agency's authority, because it was not raised by IDEC and thus is not at issue herein.

6. Although explicit reference to the Administrative Procedure Act, which incorporates the "substantial evidence" test, is made only in the "regulation" segment of § 211(d), the use of the same "substantial evidence" language causes us to interpret the test in the same way for review of both orders and regulations. For further discussion of § 706(2) criteria incorporated into judicial review under § 211(d)(1) of the Economic Stabilization Act, *see Castillo v. Army & Air Force Exchange Service,* 849 F.2d 199, 203 n. 1 (5th Cir.1988); *County Fuel Co., Inc.,* 829 F.2d at 45; *Mobil Oil Corp.,* 728 F.2d at 1485–86; *Seneca Oil Co. v. Department of Energy,* 712 F.2d 1384, 1395 (TECA 1983); *McCulloch Gas Processing Corp. v. Department of Energy,* 650 F.2d 1216, 1221 (TECA 1981).

7. The issue before the Court in *Pierce v. Underwood* was the meaning of the phrase "substantially justified" used in the Equal Access to Justice Act provision concerning attorney's fees. The Court concluded that "substantially justified" was "justified to a degree that could satisfy a reasonable person," and equated it to the "reasonable basis both in law and fact" formulation. 487 U.S. at 565, 108 S.Ct. at 2550.

8. *See* the concurring opinion of Justice Brennan, with whom Justices Marshall and Blackmun concur in part and concur in the judgment, 108 S.Ct. at 2557.

less a final judgment determines that it is based upon findings not supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Therefore the burden placed on a party attempting to set aside an agency order is a heavy one: It must make a clear showing to the court that the agency's findings were not supported by such relevant evidence as one would reasonably consider adequate to support the agency's conclusions.

The Temporary Emergency Court of Appeals has long held that it acknowledges the expertise of the administrative agency DOE, and defers to the agency decision as long as it is rationally based. "The judicial role requires approval of the DOE's decision if there is a rational basis for it." *Thriftway Co. v. Department of Energy*, 867 F.2d 1577, 1580 (TECA 1989). As a result of its deferential stance when considering an agency's determination, the court approaches its review by examining whether the basis for the administrative decision was rational. It will set aside the decision only if the basis was not supported by "such relevant evidence as a reasonable mind might accept as adequate to support" the administrative conclusion. Rather than being conflicting tests, or tests requiring different weights of proof, therefore, within this sphere of judicial review of agency orders under the Economic Stabilization Act the two standards fit neatly together.

The threshold issues resolved, the court now considers the three areas that IDEC claims are genuine issues of material fact. With respect to each issue, the OHA found that IDEC had failed to offer sufficient evidence to justify its claim for restitution. IDEC now challenges those findings as not supported by substantial evidence.

## A. *Existence of a Supplier/Purchaser Relationship*

■ As proof of its claim that it had a supplier/purchaser relationship with Petrolane prior to 1975, IDEC offered a 1972 contract transferring the assets of reseller Lemens to IDEC, affidavits from Lemens confirming the transfer of the "supplier relationship," and prior DOE decisions supporting its position. After a thorough review of the evidence, *see* 18 DOE at 88,152–53, the agency concluded that there was "no basis in the present record for finding that IDEC was entitled to receive Lemens' propane allocation from Petrolane for the period prior to August 4, 1975." 18 DOE at 88,153.

In its second opinion reconsidering IDEC's claim, the OHA noted that Petrolane had continued to supply the other reseller, Lemens, rather than IDEC during the period in question, and that there was no evidence that either reseller told Petrolane to begin supplying IDEC rather than Lemens. Accordingly, the agency concluded that Petrolane was unaware of any obligation to supply propane to IDEC. 19 DOE at 88,008. Even assuming *arguendo* that a supplier/purchaser relationship was created before 1975, the OHA still found no evidence of Petrolane's improper refusal to supply the product to IDEC. *Id.* The agency concluded that it could find "no colorable claim that Petrolane may have violated DOE allocation regulations" prior to August 4, 1975. *Id.* at 88,009.

It is clear that the OHA considered all the evidence presented by IDEC before denying IDEC's pre–1975 claim. IDEC has not pointed to other documents submitted to the agency but not reviewed, and has not demonstrated that the OHA's findings were not supported by substantial evidence. In our opinion, the "dispute" between IDEC and the DOE is not a disagreement about a genuine issue of material fact; rather, IDEC is simply disagreeing with the DOE's conclusions, which were based upon undisputed facts submitted by IDEC itself. Finding that the OHA's decision on this issue had a rational basis, we decline to set it aside.

## B. *Proof of a "Colorable Claim"*

■ In its first Order, the OHA denied IDEC's claim because IDEC had not included an official complaint regarding Petrolane's allocation violation in the evidence presented to the OHA, thereby failing to rebut "the presumption that a firm that

failed to make a contemporaneous complaint ·of the alleged allocation violation was not injured." 18 DOE at 88,153. However, with its Motion for Reconsideration IDEC submitted a copy of an April 1977 complaint. Reviewing IDEC's claim in light of this new information the OHA still found that the application was not viable: Petrolane's refusal to deliver product to IDEC was valid because the firm had an outstanding balance owed. 10 C.F.R. § 210.62(d).

IDEC now argues that the administrative record demonstrates numerous complaints and telephone calls by IDEC reporting Petrolane nondelivery which evidence a genuine issue of material fact that is in dispute between IDEC and the DOE. However, the OHA's Order made clear that telephone bills, with no information about the subject of the calls, are not "evidence that product was not supplied after an oral demand was made by IDEC." 19 DOE at 88,011. IDEC never submitted correspondence it may have had with Petrolane demanding product; and, because IDEC purchased product from other sources, the OHA concluded "that its failure to receive its full Petrolane allocation does not appear to be due to Petrolane's refusal to supply, but rather to IDEC's own business decision." *Id.* at 88,012.

Once again we find no disputed material facts, only disagreement with the agency's conclusion that such evidence is insufficient to prove a colorable claim that an allocation violation occurred. After reviewing the entire record, we find that IDEC has not demonstrated that this determination was not supported by substantial evidence.

### C. *IDEC's "Credit Problems"*

The OHA stated that Petrolane's refusal to deliver product to IDEC for a certain period was proper because "nothing in [the DOE regulations] shall be construed to require suppliers to sell to purchasers who do not arrange for proper credit or payments for allocated products." 10 C.F.R. § 210.62(d). IDEC asserts that this issue of its "credit problems" was based on a single letter from a DOE official who investigated IDEC's claim; without other evidence in the record, IDEC insists that this conclusion was not supported by substantial evidence.

We cannot agree. The appellant herein considers "substantial evidence" to be a large quantity of evidence, or at least more than one document; however, that is not the proper test. Once the standard is correctly interpreted to be the relevant evidence that a reasonable person would find adequate to support a conclusion, it becomes clear that the OHA's conclusions were well supported. The DOE investigator's letter referred to records demonstrating the amounts owing from IDEC in early 1977, IDEC's wired payment on February 14 of that year, and commencement of deliveries by Petrolane on March 31. This report by the Deputy Regional Administrator was thorough, careful, and based on records from IDEC and Petrolane. IDEC has suggested no evidence to rebut the report, and we have found none in the record. We do not question the rational basis for the OHA's conclusions concerning IDEC's "credit problems" period.

However, the DOE investigator himself raised a question about another period of time, ten weeks in which IDEC did not receive propane from Petrolane, and yet IDEC's credit difficulties had apparently been resolved. Although IDEC's entitlement to a refund for these ten weeks of nondelivery seemed more possible for this period than for any other time during the consent order period, the OHA rejected that claim:

The record is unclear as to the reasons for this failure to draw product during that time. IDEC has provided no evidence which convinces us that Petrolane was improperly refusing to supply during this period. We must conclude based on the information in the record, that during the period that IDEC was able to draw against the $50,000 credit, Petrolane properly supplied the firm with product.

19 DOE at 88,011.

We concur in the OHA's conclusion that IDEC simply failed to meet its burden of

proving injury by not making a proper record. After the regional administrator fully described his investigation and documented his conclusions by reference to specific records, he suggested that IDEC should have been able to draw product during that ten-week period. However, he pointed out that the record was not clear and that some evidence was unhelpful (such as reference to oral discussions by telephone that were not documented by confirmation correspondence). The letter concluded with an invitation to present more records and information, and an assurance that the DOE would reconsider its decision if additional facts were submitted. No further evidence concerning this ten-week period was presented. For this reason, we find that IDEC failed to meet its burden of proof.

In none of these areas, therefore, has the appellant offered facts showing genuine issues to be presented at trial. *USA Rookwood Corp.*, 888 F.2d at 851–52. Without a demonstration of material facts that would have precluded summary judgment, we will not reverse the granting of summary judgment.

## CONCLUSION

After a full review of the administrative record, we find that IDEC did not meet its burden under Rule 56 by successfully raising a genuine issue of material fact to defeat summary judgment. We further find that the appellant did not meet its burden of proving that the OHA's Orders were based upon findings that were not supported by substantial evidence (which was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"), as required for judicial review under § 211(d) of the Economic Stabilization Act. We hold that there was a rational basis for the conclusions of the Office of Hearings and Appeals in this case, and affirm the district court's grant of summary judgment in favor of the Department of Energy.